Ahmed HABIBZADAH, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A04–0807–CR–400.

Court of Appeals of Indiana.

April 17, 2009.

Transfer Denied June 11, 2009.

Anna E. Onaitis, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Ahmed Habibzadah appeals the denial of his motion to dismiss criminal charges following the determination that he was incompetent to stand trial. We affirm.

### Issue

Habibzadah raises two issues, which we consolidate and restate as whether the trial court properly denied his motion to dismiss.

### Facts

According to the probable cause affidavit, on November 11, 2005, Habibzadah allegedly stabbed his wife B.Z. in the chest and head and then "stabbed himself in the stomach and sliced his neck." App. p. 36.

On November 16, 2005, the State charged Habibzadah with Class A felony attempted murder. On November 21, 2005, the State amended the information to include a charge of Class B felony aggravated battery.

On June 22, 2007, Habibzadah was committed to the Indiana Department of Mental Health after a determination that he was not competent to stand trial because he did not "have sufficient comprehension to understand the nature of the criminal action against him and the proceedings therein and to make his defense." *Id.* at 87. Habibzadah has been diagnosed with receptive expressive language disorder because as a child Habibzadah sustained a traumatic brain injury and has "severe hearing difficulties." Tr. p. 15. Habibzadah is "essentially deaf" and has "some cognitive impairment that . . . extends beyond any hearing deficits." *Id.*

On January 28, 2008, Habibzadah's doctors informed the trial court that Habibzadah had not attained competency and "would not retain competency in the foreseeable future." App. p. 105. Accordingly, civil commitment proceedings were initiated. While the civil commitment proceedings were pending, Habibzadah moved to have the pending criminal charges dismissed. Following a hearing, the trial court determined that it did not have the authority to dismiss the charges and that it would be premature to grant the motion because of the possibility that Habibzadah could become competent. Habibzadah now appeals.

### Analysis

Initially, we address Habibzadah's argument that the trial court did have authority to dismiss the charges. This issue was addressed in *State v. Davis*, 898 N.E.2d 281 (Ind.2008). On February 21, 2004, Davis was charged with Class D felony criminal recklessness after she walked into a bank, waved a knife in the air, and demanded money from a closed account. Davis was later determined to be incompetent to stand trial and was committed to an appropriate psychiatric institution. Davis's doctor advised the trial court that she "cannot be restored to competence" and that she "is too guarded and paranoid to ever be able to work for her legal counsel." *Davis*, 898 N.E.2d at 284. On March 27, 2007, Davis filed a motion to dismiss the pending criminal charges arguing that she had already been hospitalized more days than the maximum possible confinement she could have received if she was eventually convicted. The trial court granted her motion, and the State appealed.

In addressing Davis's claims, our supreme court recognized a trial court's "inherent authority to dismiss criminal charges where the prosecution of such charges would violate a defendant's constitutional rights." *Davis*, 898 N.E.2d at 285. The court also recognized the statutory authority to dismiss provided by Indiana Code Section 35–34–1–4. In addressing this statute, the *Davis* court observed, "the open ended catchall provision of subsection (a)(11) [1] is recognition that there may be additional reasons for the dismissal of criminal charges. A violation of a defendant's constitutional right to due process certainly fits in that category." *Id.*

Having determined that the trial court is inherently and statutorily authorized to dismiss charges, the *Davis* court then considered "whether there is an inherent denial of due process in holding pending criminal charges indefinitely over the head of one who will *never* have a chance to prove her innocence." *Id.* at 287 (emphasis added). The court concluded:

> Because Davis' pretrial confinement has extended beyond the maximum period of

---

1. Indiana Code Section 35–34–1–4(a)(11) permits dismissal upon "[a]ny other ground that is a basis for dismissal as a matter of law."

any sentence the trial court can impose, and because the State has advanced no argument that its interests outweigh Davis' substantial liberty interest, we conclude it is a violation of basic notions of fundamental fairness as embodied in the Due Process Clause of the Fourteenth Amendment to hold criminal charges over the head of Davis, an incompetent defendant, when it is apparent she will never be able to stand trial.

*Id.* at 290.

■ In making his claim that the charges pending against him should be dismissed, Habibzadah contends that his "right to fundamental fairness and substantial justice is an adequate basis for dismissal as a matter of law." Appellant's Br. p. 6. Based on *Davis*, we conclude that a trial court has inherent authority and statutory authority to dismiss criminal charges where the prosecution would violate a defendant's constitutional due process rights. *See id.* at 285. However, whether permitting the charges to remain pending in this case violates Habibzadah's due process rights is another question.

■ Under the facts of this case, we conclude that Habibzadah has not established a violation of his due process rights. First, unlike *Davis*, there has not been a determination that Habibzadah will *never* be restored to competency. Although the evidence suggests that such restoration is unlikely, the possibility exists. *See* Tr. pp. 19–20. Moreover, unlike Davis, Habibzadah has not been confined beyond the maximum period of any sentence that the trial court could impose if he were convicted of the pending charges. The maximum possible sentence that Habibzadah faces for Class A felony attempted murder is fifty years. Assuming Habibzadah has been confined since he allegedly committed the offense in November 2005, with good

time credit Habibzadah would not be eligible for release until 2030.

Because it is possible that Habibzadah may be restored to competency and because he has not been confined for longer than the potential maximum sentence he faces, the trial court did not abuse its discretion in denying his motion to dismiss. *See Davis*, 898 N.E.2d at 285 ("Abuse of discretion is the appropriate standard for appellate review of a trial court's decision to dismiss a charging information"). Under these circumstances, we cannot conclude that due process, which includes the concepts of equity and fundamental fairness, requires the dismissal of the charges against Habibzadah.

### Conclusion

Although a trial court has the inherent and statutory authority to dismiss charges where the prosecution would violate a defendant's constitutional rights to due process, the facts of this case do not warrant dismissal. We affirm.

Affirmed.

BAILEY, J., concurs.

MATHIAS, J., concurs with separate opinion.

MATHIAS, J., concurring.

I concur in the majority's decision to affirm the trial court, but believe that our current criminal justice procedures are inadequate to consider and resolve issues presented by defendants suffering from long-term or permanent mental illness. I write separately to highlight the issues raised in this case regarding the dismissal of charges against a defendant who has been civilly committed because he is mentally incompetent to stand trial.

The psychiatrists in this case uniformly determined that Habibzadah was not com-

petent to assist in his own defense.[2] However, one of the two psychiatrists testified that the chances that Habibzadah would be restored to competency were less than fifty percent based on the level of improvement shown after being committed. Tr. pp. 19–20. The testimony of this psychiatrist provides the basis for the majority's decision that Habibzadah has not established that he will *never* be restored to competency.

In *State v. Davis*, 898 N.E.2d 281, 290 (Ind.2008), our supreme court determined:

Because Davis' pretrial confinement has extended beyond the maximum period of any sentence the trial court can impose, and because the State has advanced no argument that its interest outweigh Davis' substantial liberty interest, we conclude it is a violation of basic notions of fundamental fairness as embodied in the Due Process Clause of the Fourteenth Amendment to hold criminal charges over the head of Davis, an incompetent defendant, when it is apparent she will never be able to stand trial.

The issue left untouched in *Davis* is what happens to charges filed against a defendant who has not yet been civilly committed for the full length of the maximum sentence allowed under the charges against him or her but who is considered mentally incompetent without a chance of recovering competence. Mental health diagnoses are imprecise at best. The difference between indeterminate civil commitment with the underlying charges dismissed and continued pending of charges during that commitment is the word

"never," or words to that effect, in a psychiatrist's report.[3] In Davis, our supreme court was presented with facts that allowed them to easily dispense with the case based on the length of pre-trial confinement, rather than on an in-depth analysis of the effect of the defendant's competency on the dismissal of charges.

A large and ironic lapse in the logic of our criminal justice system is that its initial imperative is to determine the competency of defendants prospectively, to assist counsel at trial. And the courts can determine whether the defendant is able to assist in his or her own defense at any time, whether relatively soon after arrest, or long thereafter, sometimes years after arrest. Only after a defendant is determined competent is the issue of competency at the time of the crime raised, and only along with the trial of the facts of the offense alleged.

The problem arises that if a defendant is not competent to assist in his or her own defense, under our current system, the defendant will never be able to go to trial and present evidence relating to his or her culpability at the time of the crime. Without more guidance, *Davis* requires that an incompetent defendant be civilly committed for the maximum sentence allowed under the crimes he or she was charged with unless he or she becomes competent to stand trial during that time period. Hypothetically, an incompetent defendant charged with murder could be held for life if that defendant never regained competency to stand trial for the crime allegedly committed. Even more troublesome is the

---

**2.** One of the psychiatrists who examined Habibzadah initially believed that he was not competent, but later determined that Habibzadah was "malingering." I would note that if the charges were dismissed based on a fraudulent determination of incompetency, the State would be well within its rights to

seek to reopen the case based on the fraud perpetrated upon the court by the defendant.

**3.** The defendant in *Davis* also received a psychiatrist's determination that she would never return to competence. *Davis*, 898 N.E.2d at 284.

possibility of a defendant who regains competency during civil commitment over a period of decades. It is quite likely that such a person will have no memory of the crime charged and be horrified upon learning of it. Even worse, that defendant might then be convicted for the underlying crime, in part because his demeanor is now that of a competent person.

Habibzadah does not have the benefit of a psychiatrist's statement that he will *never* return to competence. One can wonder whether a psychiatrist's statement that a defendant has a five, ten or twenty percent chance of returning to competency would preclude the release to civil commitment and dismissal of criminal charges under *Davis*. In this case, a less than fifty percent chance that Habibzadah would be returned to competence prevented the dismissal of charges. Habibzadah is charged with a Class A felony that carries a maximum sentence of fifty years. Under *Davis,* the time frame for determining a return to competency for Habibzadah is therefore fifty years, during which time Habibzadah will be civilly committed. Every year that Habibzadah is held, the evidence grows stale and the memories both of witnesses and of the mentally handicapped Habibzadah dim.

Our criminal justice system has a mechanism to deal with temporary incompetence as it pertains to criminal culpability, or scienter, but fails miserably when faced with the likely long-term or permanent mental illness of a criminal defendant. Even *Davis* acknowledges that confinement of an incompetent person may be a violation of due process, but only after the defendant has been civilly committed for the maximum sentence allowed under the charges filed, when the State does not have an interest that outweighs the defendant's liberty interest.

Our criminal justice system needs an earlier and intervening procedure to determine competency retroactively to the time of the alleged crime. Perhaps we as a society need to consider the concept of a defendant being *unchargeable* because of mental illness under Indiana Code section 35–41–3–6, and not just guilty but mentally ill under Indiana Code section 35–36–2–1, et. seq. In either case, the commitment proceedings provided for in Indiana Code section 35–36–2–4 would both protect society and best care for the defendant involved.

Whether such a procedure is promulgated by the Indiana Supreme Court through its rule-making process or by the Indiana General Assembly through statute, it is time for the truly long-term, incompetent criminal defendant to have an earlier and intervening opportunity for a determination of his or her competency at the time of the crime alleged. Such a procedure convened soon after arrest, rather than years later when stale evidence and dim or non-existent memories are all that are left, or never, would best serve society and the defendant.