**Darren MATLOCK, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–1006–CR–609.

Court of Appeals of Indiana.

Jan. 21, 2011.

Timothy J. Burns, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Joby D. Jerrells, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Darren Matlock appeals his conviction for Class A misdemeanor operating a vehicle while intoxicated ("OWI"). We affirm.

### Issues

The issues before us are:

I.   whether the trial court erred in denying Matlock's motion to dismiss; and

II.   whether there is sufficient evidence to support Matlock's conviction.

### Facts

On May 23, 2009, Officer Robert Parker of the Indianapolis Metropolitan Police Department was on patrol when he observed

a vehicle, driven by Matlock, traveling approximately 35 m.p.h. in a 50 m.p.h. zone. Matlock crossed the center line twice, and at one point slammed on his brakes and almost caused Officer Parker to collide with him. Officer Parker decided to pull Matlock over. When Matlock got out of the vehicle, he had to lean against it in order to remain standing. Officer Parker also noticed that Matlock smelled of alcohol, had bloodshot and glassy eyes, and slurred speech. Officer Parker then performed three field sobriety tests, all of which Matlock failed. Matlock refused to take a chemical test.

Also on May 23, 2009, the State charged Matlock with Class A misdemeanor OWI and Class B misdemeanor public intoxication. Matlock originally remained in the custody of the Marion County Sheriff.[1] On June 30, 2009, Matlock's case was transferred to a different trial court because of concerns regarding his mental health. On August 11, 2009, after Matlock had been professionally evaluated, the State stipulated and the trial court found that he was presently incompetent to stand trial, and he was committed to the custody of Richmond State Hospital.

On November 24, 2009, Matlock's counsel filed a motion to dismiss the charges against him, contending that he had already been held in custody, either by the Sheriff or at Richmond State Hospital, for a period beyond the maximum sentence he could have received if convicted as charged. On December 2, 2009, Richmond State Hospital informed the trial court that Matlock had regained competency, and he was released on his own recognizance. The trial court denied the motion to dismiss on January 5, 2010.

A jury trial was held on February 8, 2010, but it ended in a mistrial. A second jury trial was held on May 5, 2010, and resulted in a conviction for Class A misdemeanor OWI and the State's dismissal of the public intoxication charge. The trial court sentenced Matlock to time served, and also ordered a 180–day suspension of his driver's license. Matlock now appeals.

### Analysis

#### I. Motion to Dismiss

▆ We first address the trial court's denial of Matlock's motion to dismiss. We review a trial court's ruling on a motion to dismiss a charging information for an abuse of discretion. *State v. Davis,* 898 N.E.2d 281, 285 (Ind.2008). The statute governing the dismissal of informations is Indiana Code Section 35–34–1–4. Subsection (a)(11) of that statute permits the dismissal of an information on "[a]ny other ground that is a basis for dismissal as a matter of law." Such grounds would include a violation of a defendant's constitutional right to due process. *Davis,* 898 N.E.2d at 285. Additionally, trial courts "have inherent authority to dismiss criminal charges where the prosecution of such charges would violate a defendant's constitutional rights." *Id.* Section 35–34–1–4 is merely legislative recognition of this authority. *Id.*

At the outset, we mention the State's argument that Matlock's motion to dismiss was untimely because it was filed later than ten days prior to the omnibus date in his case. Indiana Code Section 35–34–1–4(b)(2) states that a motion to dismiss, when the defendant is charged only with one or more misdemeanors, "shall be made no later than . . . ten (10) days . . . prior to the omnibus date." However, it would be illogical to enforce this time limit in a case such as this one, where the defendant's argument is dependent upon the defendant being detained for a long period of time

---

1. The CCS indicates that Matlock was placed     in a "release service program." App. p. 5.

before trial. Moreover, Section 35–34–1–4(b) goes on to clearly state that, notwithstanding the previously-mentioned time limit, a motion to dismiss under subsection (a)(11) "*may be made* or renewed at any time before or during trial." (Emphasis added). Matlock's motion was made under subsection (a)(11), which the *Davis* opinion recognized as the appropriate vehicle for claims such as his. Matlock's motion to dismiss was not untimely.

Turning to the merits, Matlock asserts that the trial court was required to dismiss the charging information where he was detained either by the Sheriff or in Richmond State Hospital for a period in excess of the maximum sentence that could have been imposed following conviction.[2] The starting point in our analysis is Davis. There, our supreme court faced a situation where it had been determined that an incompetent defendant would never regain competency to stand trial, and she had been confined to a state hospital for a period in excess of the maximum sentence she could have received for the Class D felony offense with which the State had charged her. Ultimately, our supreme court held:

> Because Davis' pretrial confinement has extended beyond the maximum period of any sentence the trial court can impose, and because the State has advanced no argument that its interests outweigh Davis' substantial liberty interest, we conclude it is a violation of basic notions of fundamental fairness as embodied in the Due Process Clause of the Fourteenth Amendment to hold criminal charges over the head of Davis, an in-

competent defendant, when it is apparent she will never be able to stand trial. *Davis*, 898 N.E.2d at 290.

Before reaching this conclusion, however, the court expressly stated:

> We can conceive of a number of instances in which the State would have some legitimate interest in determining the guilt or innocence of an accused even though the accused, in effect, had already been punished. For example, a conviction would be required to enhance a sentence for a felony committed as a member of a criminal gang, to prohibit possession of a firearm, to require registration as a sex offender, or to prove status as a habitual offender, a habitual substance offender, or a habitual traffic offender. If any one or more of these interests were present, then it would be necessary to determine whether such interest or interests were sufficiently important to overcome an accused's substantial liberty interest.

*Id.* at 289–90 (citations omitted).

We later applied *Davis* in *Habibzadah v. State*, 904 N.E.2d 367 (Ind.Ct.App.2009), *trans. denied.* There, the defendant was charged with Class A felony attempted murder, which carries a maximum fifty-year sentence. He was declared incompetent to stand trial and hospitalized, but there was no definitive conclusion that he would never regain competency. The defendant moved to dismiss the charging information less than three years after being charged and initially detained. We affirmed the denial of the motion to dismiss, noting that (1) it had not been determined that the defendant likely would never re-

---

**2.** The maximum sentence for a Class A misdemeanor is one year. *See* Ind.Code § 35–50–3–2. However, a person confined while awaiting trial is entitled to one day of credit for each day of confinement, if they are assigned to credit class I. *See* I.C. § 35–50–6–

3(a). Matlock calculates that he exceeded the maximum possible sentence for a Class A misdemeanor when he was detained by either the Sheriff or Richmond State Hospital for more than 182.5 days. *See* App. p. 36. The State does not dispute this calculation.

gain competency; and (2) that the defendant had not yet been confined beyond the maximum sentence that could be imposed if he were convicted. *Habibzadah*, 904 N.E.2d at 369.

A panel of this court expanded upon *Habibzadah* in *Denzell v. State*, 935 N.E.2d 1245 (Ind.Ct.App.2010), *trans. pending.* The *Denzell* opinion held that, even where a defendant had been hospitalized due to incompetency for a period exceeding the maximum sentence for the crime(s) for which the defendant has been charged, dismissal of the charging information is not warranted unless there has been a determination that is unlikely the defendant will ever regain competency. *Denzell*, 935 N.E.2d at 1248.

This case is similar in some respects to *Denzell*, in that Matlock was detained, due at least in part because of his incompetency, in excess of the maximum sentence he could have received if convicted, but there was never a determination that Matlock was unlikely to regain competency. In fact, of course, Matlock did regain competency shortly after filing his motion to dismiss. Nonetheless, and especially given that our supreme court currently is considering a petition to transfer in *Denzell* and it is not yet certified, we need not decide whether to follow its interpretation of *Davis* and *Habibzadah.*[3]

Instead, we reiterate *Davis*'s observation that there are occasions when the State's own substantial interests in determining the guilt or innocence of an accused outweigh the liberty interests of the accused, even though the accused, in effect, has already been fully punished. Most criminal convictions may have collateral consequences of some kind aside from in-carceration. The State mentions some of these collateral consequences in its brief, such as an impact on voting rights or on ability to obtain a professional license of some kind. If, however, we were to recognize that *any* potential collateral consequence of a criminal conviction were sufficient to allow the State to proceed with prosecution of a long-term incompetent individual who already has been detained in excess of the maximum sentence for a particular crime, then it would appear very few accuseds could avail themselves of *Davis*'s holding. In other words, we would be recognizing an exception to *Davis* that would swallow its rule. We are reluctant to recognize such a rule, and believe that the "substantial interests" alleged by the State to allow an exception to *Davis* must be interests directly related to the particular nature of the offense with which the accused is charged.

Here, Matlock was charged with Class A misdemeanor OWI. There are numerous collateral consequences associated with a conviction for that offense, aside from incarceration, that are substantial and directly related to the particular nature of that offense. For example, an OWI conviction requires the suspension of the defendant's driver's license for a period of time specified by the trial court, with the length depending on various circumstances. *See* Ind.Code § 9–30–5–10. An A misdemeanor OWI conviction likewise is something that in the future could form the basis of an habitual substance offender sentence enhancement, *see* I.C. § 35–50–2–10, or impact a defendant's status as an habitual traffic offender, *see* I.C. § 9–30–10–4, or cause a future OWI conviction to be enhanced to a Class D felony, *see* I.C.

---

3. Our supreme court also is currently considering whether a charging information ought to be dismissed as to an individual who is likely never to regain competency, but who has never been officially "detained" by the State. *See Curtis v. State*, 932 N.E.2d 204, 208 (Ind.Ct.App.2010), *trans. granted.*

§ 9–30–5–3. Based on these factors put together, we conclude the State has a substantial interest in pursuing conviction of a defendant accused of OWI, even if that defendant has spent a significant amount of time in detention as a result of mental incompetency, particularly where it has not been established that it is unlikely the defendant will ever regain competency.

In other words, where the possibility exists that a defendant accused of OWI may at some point in the future regain competency and be released back into society, which release also may include the defendant driving, the State may pursue an OWI conviction even if the defendant's incompetency caused he or she to be detained for a period in excess of the maximum possible sentence for OWI. Here, Matlock's incompetency never was alleged to be, and in fact was not, permanent. As such, the State was not precluded from pursuing an OWI conviction against Matlock. The trial court did not abuse its discretion in denying Matlock's motion to dismiss.

### II. Sufficiency of the Evidence

■ We now address Matlock's contention that there was insufficient evidence to support his conviction. When we review the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State,* 867 N.E.2d 144, 146 (Ind.2007). "It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction." *Id.* When confronted with conflicting evidence, we must consider it in a light most favorable to the conviction. *Id.* We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.*

■ In order to convict Matlock of Class A misdemeanor OWI, the State was required to prove that he operated a vehicle while intoxicated in a manner that endangered a person. *See* I.C. § 9–30–5–2(b). "Intoxicated" means being under the influence of alcohol or another substance "so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties." I.C. § 9–13–2–86. "Impairment can be established by evidence of: (1) the consumption of a significant amount of alcohol; (2) impaired attention and reflexes; (3) watery or bloodshot eyes; (4) the odor of alcohol on the breath; (5) unsteady balance; (6) failure of field sobriety tests; and (7) slurred speech." *Vanderlinden v. State,* 918 N.E.2d 642, 644 (Ind.Ct.App.2009), *trans. denied.* Proof of a person's blood alcohol content is not required to establish intoxication. *Ballinger v. State,* 717 N.E.2d 939, 943 (Ind.Ct.App.1999).

We note that Matlock alludes to the fact that Officer Parker was an unpaid reserve officer at the time of the incident. This has no bearing on our analysis. Officer Parker testified that he received precisely the same training as a paid officer and worked approximately the same number of hours per week. Specifically, Officer Parker had received training in recognizing intoxicated persons and was certified to administer field sobriety tests. In his experience, Officer Parker had encountered "hundreds" of intoxicated persons. Tr. p. 30. Officer Parker's pay status is irrelevant to our evaluation of the sufficiency of the evidence.

There was significant evidence that Matlock was intoxicated when Officer Parker pulled him over. First, Matlock's driving was highly erratic. Officer Parker also noted that Matlock smelled of alcohol, had to lean against his vehicle in order to remain standing, had bloodshot and glassy

eyes, and slurred speech. Matlock also failed three field sobriety tests, and Officer Parker expressed "no doubt" that Matlock was intoxicated. *Id.* at 31. This evidence clearly was sufficient to establish Matlock's intoxication. *See Ballinger,* 717 N.E.2d at 943 (holding evidence of intoxication was "overwhelming" where defendant had odor of alcohol, was a "little unstable," eyes were red and glassy, speech was slurred, and failed three field sobriety tests). Matlock does not argue that there was insufficient evidence of endangerment caused by his intoxication. In any event, Matlock's erratic driving, including nearly causing an accident with Officer Parker, satisfied that element. There is sufficient evidence to support his conviction for Class A misdemeanor OWI.

### Conclusion

The trial court did not err in denying Matlock's motion to dismiss the charging information, and there is sufficient evidence to support his conviction. We affirm.

Affirmed.

BAKER, J., and VAIDIK, J., concur.