MATHIAS, Judge,
concurring.
[23] I concur with my colleagues.
[24] However, I write separately to point out yet again the inadequacy of our criminal justice system when confronted with defendants who are mentally ill. Psychiatric examinations of a defendant who likely suffers from serious mental illness should occur shortly after arrest and before any administration of psychotropic medication in jail to more accurately determine whether the defendant could have possibly had the requisite scienter or mens rea at the time of the crime. As I have previously stated:
Our criminal justice system needs an earlier and intervening procedure to determine competency retroactively to the time of the alleged crime. Perhaps we as a society need to consider the concept of a defendant being unchangeable because of mental illness under Indiana Code section 35-41-3-6, and not just guilty but. mentally ill under Indiana Code section 35-36-2-1, et seq. In either case, the commitment proceedings provided for in Indiana Code section 35-36-2-4 would both protect society and best care for the defendant involved.
Whether such a procedure is promulgated by the Indiana Supreme Court through its rule-making process or by the Indiana General Assembly through statute, it is time for the truly long-term, incompetent criminal defendant to have an earlier and intervening opportunity for a determination of his or her competency at the time of the crime alleged. ' Such a procedure convened soon after arrest, rather than years later when stale evidence and dim or nonexistent memories are all that are left, or never, would best serve society and .the defendant.
Habibzadah v. State, 904 N.E.2d 367, 371 (Ind.Ct.App.2009) (Mathias, J., concurring).
[25] In this case, the stabbings occurred on November 8, 2013, and Robinson was charged on November 12, 2013. It was more than six months before the trial court issued its order appointing Dr. Wendt and Dr. Little. Dr. Little interviewed Robinson on August 4, 2014, for approximately one hour. Dr. Wendt interviewed Robinson on August 6, 2014, for approximately two-and-one-half hours. *1244 These two interviews took place almost nine months after the acts that led to Robinson’s arrest and charges, when a delay of even nine days might well have caused inaccurate assessment.
[26] The doctors agreed that Robinson suffers from chronic mental illness, but only Dr. Little believed that Robinson was able to appreciate the wrongfulness of his conduct. Also, “[o]ur cases have consistently held that conflicting credible expert testimony is sufficiently probative of sanity.” See Galloway v. State, 938 N.E.2d 699, 710 (Ind.2010) (emphasis added).
[27] I believe that the trial court should have concluded that Dr. Little’s testimony lacked credibility, as a matter of law, under its gatekeeping authority regarding expert testimony Ind. Evid. Rule 702; Halterman v. Adams County Bd. of Com’rs, 991 N.E.2d 987, 989-90(Ind.Ct.App.2013) (citing Burp v. State, 612 N.E.2d 169, 172 (Ind.Ct.App.1993)). After his brief interview with Robinson, Dr. Little reviewed his medical records and the police reports but did not review the video of the stabbing. He did not take any notes during his interview with Robinson. Three months later, without any notes of that interview, he prepared and filed his report with the trial court. At trial, Dr. Little also testified that he was not aware that immediately after the stabbing, Robinson was walking around in circles “wailing” and stating over and over, “[t]hey wouldn’t leave me alone.” Tr. pp. 348, 880-81. Refusing to admit Dr.- Little’s opinion because of these serious inadequacies would have left the jury with Dr. Wendt’s testimony which found that Robinson was incapable of forming the requisite scienter at the time of the criminal act.
[28] Yet, in Indiana, juries are empowered to ignore expert testimony, in favor of the testimony of the lay witnesses. With such a horrendous sequence of events, the jury chose to do so at Robinson’s trial. See Myers v. State, 27 N.E.3d 1069 (Ind.2015). When faced with acts such as those committed by Robinson, I can understand the jury’s emotion and its desire to protect society by placing a defendant like Robinson behind bars for the rest of his life, rather than considering the logic of a lifetime of treatment in a secure mental health facility. It is a difficult decision for a judge to overturn such a verdict. “Indiana precedent has clearly established that unanimous expert testimony alone is not determinative where there is conflicting lay opinion testimony or demeanor evidence also presented at trial” See id. at 1075.1 am therefore constrained to concur.