Alva **CURTIS**, Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0911–CR–1106.

Court of Appeals of Indiana.

Aug. 5, 2010.

Anna Onaitis Holden, Public Defender Agency, Indianapolis, IN, Attorneys for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Chief Judge.

Here, the defendant is undisputedly mentally ill and mentally disabled to an extent that he is incompetent to stand trial. It is likewise undisputed—and the trial court found—that he will never recover and become competent. Under these circumstances, we find that it was a violation of his right to due process to deny his motion to dismiss the criminal charges pending against him.

Appellant-defendant Alva Curtis brings this interlocutory appeal, arguing that the trial court erroneously denied his motion to dismiss and discharge the criminal proceedings against him. Curtis contends that because he is permanently incompetent to stand trial, the pending criminal charges against him should be dismissed and discharged. We reverse and remand with instructions to dismiss the charging information.

### FACTS

Fifty-eight-year-old Curtis was born with cerebral palsy and has had a seizure disorder for many years. He left school at the age of sixteen, having completed only the fifth or sixth grade. Curtis is unable to perform simple calculations and is considered to be mildly mentally disabled. He can dress himself, count to fifty, and write his name, but is unable to go grocery shopping, perform basic household chores, or take care of his finances. He is unemployed and receives Social Security disability payments.

Curtis lived with Judy Day, a friend, at the time of the instant events. Day had informed Curtis's sister and brother that Curtis had begun wandering, roaming the streets late at night and unable to find his way home. Day and Curtis's siblings had also noticed him becoming increasingly

forgetful and unable to answer simple questions, such as what he had eaten for dinner. Curtis had also lost weight, was occasionally unable to recognize his brother, forgot sometimes that Day lived in the house with him, and had begun imagining things.

On June 28, 2007, the State charged Curtis with residential entry, battery, and criminal mischief after he had allegedly yelled at his neighbor when the neighbor walked past Curtis's home. The State alleged that Curtis had followed the neighbor into his house, struck the neighbor with a wooden chair, and damaged his neighbor's screen door, a keyboard, and a wooden stool.

After Curtis was released from jail on July 26, 2007, his forgetfulness increased. He was unable to live independently, and because his medication regimen had been disrupted following his arrest, his seizures increased. Curtis moved into his brother's home and his condition continued to deteriorate. He frequently wandered at night and got lost. Eventually, Curtis's siblings moved him to a long-term, locked facility, and then to Sugar Creek Nursing Home and Rehabilitation. His Sugar Creek medical records indicate that he suffers from dementia with psychotic features, seizure disorder, diabetes, cerebral palsy, syncope, arthritis, and is mentally challenged.

On August 30, 2007, Curtis requested a competency evaluation. The trial court granted the motion but cancelled the pending evaluation on September 27, 2007, after Curtis's attorney withdrew the pending motion so the parties could negotiate a plea agreement. The parties were unable to reach an agreement.

On February 27, 2008, Curtis filed a motion to suppress the statements he had made to police officers following his arrest. Following a hearing on March 19, 2008, the trial court granted the motion to suppress on the basis that Curtis did not have the mental capacity to knowingly and voluntarily waive his rights. On March 31, 2008, the State filed a motion to have Curtis's competency to stand trial evaluated based on the evidence that had been presented at the March 19 hearing. The trial court "declined to rule on that motion at that time." Appellant's App. p. 78.

During the January 15, 2009, hearing on Curtis's motion to exclude a witness, Curtis orally moved for a competency evaluation, and on January 22, 2009, Curtis's attorney filed a written motion to that effect. On February 13, 2009, the trial court ordered two doctors to conduct psychiatric examinations of Curtis to determine his competency to stand trial.

Dr. Philip Coons found that Curtis was not oriented to time or place, could not recall his parents' or sister's names, and had "very serious dementing symptoms." Confidential Medical Record (CMR) p. 6. Dr. George Parker agreed that Curtis was not oriented to time or place and was unable to correctly state his age or birth date. Both doctors opined that Curtis is unable to understand the proceedings against him or assist his attorney. Dr. Parker concluded that "it is unlikely that the defendant will ever be restored to competence in the future.... Curtis's dementia is very likely to progress overtime, such that his memory will deteriorate further in the foreseeable future." *Id.* at 12; *see also* CMR p. 7 (Dr. Coons opined that Curtis's "competency to stand trial can never be restored").

Notwithstanding the fact that the trial court received Dr. Coons's report on February 26, 2009, and Dr. Parker's report on April 3, 2009, it neither held a hearing nor made a ruling on Curtis's competence to stand trial. On May 8, 2009, Curtis filed a

motion to dismiss, which the trial court denied on August 26, 2009, finding that "Curtis will never become competent" and that "[t]he State will never be able to obtain a conviction in this matter," but refusing to commit Curtis to the Indiana Department of Mental Health and Addictions based on the cost to the state and refusing to grant Curtis's motion to dismiss. Appellant's App. p. 79. On September 4, 2009, Curtis filed a motion to dismiss and discharge pursuant to Indiana Criminal Rule 4(C), which the trial court denied on September 23, 2009, using essentially the same language contained in its August 26 order. The trial court granted Curtis's petition to certify the September 23 order for interlocutory appeal, and we accepted jurisdiction on December 9, 2009.

### DISCUSSION AND DECISION

We review a trial court's ruling on a motion to dismiss a charging information for an abuse of discretion. *State v. Davis*, 898 N.E.2d 281, 285 (Ind.2008). Our Supreme Court has explained that "courts have the inherent authority to dismiss criminal charges where the prosecution of such charges would violate a defendant's constitutional rights," including the constitutional right to due process. *Id.*

In *Davis*, the mentally ill defendant was charged with class D felony criminal recklessness in 2004. *Id.* at 283. Two doctors who examined her found her to be incompetent, and in May 2004, the trial court committed Davis to the Division of Mental Health and Addiction to be confined in an appropriate psychiatric institution. In subsequent years, multiple doctors concluded that Davis would not regain competence in the foreseeable future, if at all. On March 27, 2007, Davis filed a motion to dismiss, arguing that her hospitalization was tantamount to confinement and that

the pending criminal charges when she was likely never to recover violated her right to due process. The trial court granted Davis's motion, and in affirming that ruling, our Supreme Court stated as follows:

[T]he State [does not] otherwise argue on appeal that there is any substantial public interest to be served by the determination of Davis' guilt or innocence now that she may no longer be required to serve any further confinement. We also observe that the indefinite prolonging of criminal charges carries the very real likelihood of subjecting Davis to the "anxiety and scorn accompanying public accusation," such that the trial court's action may be supported. *Klopfer*[ v. North Carolina, 386 U.S. 213, 222, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967) ].

\*   \*   \*

Because Davis' pretrial confinement has extended beyond the maximum period of any sentence the trial court can impose, and because the State has advanced no argument that its interests outweigh Davis' substantial liberty interest, we conclude it is a violation of basic notions of fundamental fairness as embodied in the Due Process Clause of the Fourteenth Amendment to hold criminal charges over the head of Davis, an incompetent defendant, when it is apparent she will never be able to stand trial. *Id.* at 290.

The State argues that *Davis* is distinguishable from the circumstances herein because the defendant in Davis had been committed by the State and confined for longer than the maximum period of time she could have served in prison. Here, on the other hand, Curtis has never been committed or confined by the State, and the time that has elapsed since his arrest does not exceed the maximum sentence he would face if convicted as charged.

We find this to be a distinction without a difference. It is undisputed in the record that Curtis is incompetent to stand trial. It is also undisputed that he will never become competent, and the trial court found as much. Appellant's App. p. 86. The trial court elected not to order Curtis committed to the State Department of Mental Health and Addictions because it found that the community is safe from Curtis while he resides in the nursing home, which is "better suited to manage the care of the defendant with terminal dementia" than a state hospital would be, and also because "the cost for [ ] Curtis' care at a nursing home is less than the cost to the State of Indiana if Curtis[ ] [were] in the state hospital." *Id.*

While we do not fault the trial court for this pragmatic approach, the rationale for declining to commit Curtis to a state hospital does not apply equally to the trial court's decision to deny the motion to dismiss the charging information. Although our Supreme Court's holding in *Davis* was partially premised on the defendant's confinement, the court also made it plain that the mere act of " 'holding criminal charges indefinitely over the head of one who will never have a chance to prove his innocence,' " *Davis*, 898 N.E.2d at 287 (quoting *Jackson v. Indiana*, 406 U.S. 715, 740, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972)), is a violation of the defendant's due process rights. As in *Davis*, the indefinite prolonging of criminal charges carries the very real likelihood that Curtis would be subjected to the anxiety and scorn accompanying public accusation. 898 N.E.2d at 290.

Inasmuch as it is undisputed that Curtis is mentally ill, mentally disabled, incompetent to stand trial, and will remain incompetent for the rest of his life, we find that it is a violation of his right to due process to permit these criminal charges hanging over his head for the rest of his life. *Cf. State v. Jones*, 918 N.E.2d 436 (Ind.Ct. App.2009) (reversing in part where trial court dismissed criminal charges pending against criminal defendant because defendant had not yet been confined longer than his maximum possible sentence, with no discussion regarding the likelihood that he could become competent in the future); *Habibzadah v. State*, 904 N.E.2d 367, 369 (Ind.Ct.App.2009) (affirming trial court's denial of defendant's motion to dismiss because he had not been confined for longer than his maximum possible sentence and it was possible that he would be restored to competency), *trans. denied.* Therefore, we find that the trial court should have granted his motion to dismiss and discharge.

As a final aside, we highlight the prescient concerns of a member of this panel on this precise issue. In *Habibzadah*, the record established that there was still a possibility that the defendant would be restored to competency at some point in the future. In that situation, Judge Mathias concurred with the denial of Habibzadah's motion to dismiss. In a separate opinion, however, he observed the inadequacy of our current criminal justice procedures with regard to mentally ill defendants:

> A large and ironic lapse in the logic of our criminal justice system is that its initial imperative is to determine the competency of defendants prospectively, to assist counsel at trial. And the courts can determine whether the defendant is able to assist in his or her own defense at any time, whether relatively soon after arrest, or long thereafter, sometimes years after arrest. Only after a defendant is determined competent is the issue of competency at the time of the crime raised, and only along with the trial of the facts of the offense alleged.

The problem arises that if a defendant is not competent to assist in his or her own defense, under our current system, the defendant will never be able to go to trial and present evidence relating to his or her culpability at the time of the crime. Without more guidance, [*State v. Davis*, 898 N.E.2d 281 (Ind.2008),] requires that an incompetent defendant be civilly committed for the maximum sentence allowed under the crimes he or she was charged with unless he or she becomes competent to stand trial during that time period. Hypothetically, an incompetent defendant charged with murder could be held for life if that defendant never regained competency to stand trial for the crime allegedly committed. Even more troublesome is the possibility of a defendant who regains competency during civil commitment over a period of decades. It is quite likely that such a person will have no memory of the crime charged and be horrified upon learning of it. Even worse, that defendant might then be convicted for the underlying crime, in part because his demeanor is now that of a competent person.

Habibzadah does not have the benefit of a psychiatrist's statement that he will *never* return to competence. One can wonder whether a psychiatrist's statement that a defendant has a five, ten or twenty percent chance of returning to competency would preclude the release to civil commitment and dismissal of criminal charges under *Davis*. In this case, a less than fifty percent chance that Habibzadah would be returned to competence prevented the dismissal of charges. Habibzadah is charged with a Class A felony that carries a maximum sentence of fifty years. Under *Davis*, the time frame for determining a return to competency for Habibzadah is therefore fifty years, during which time Ha-

bibzadah will be civilly committed. Every year that Habibzadah is held, the evidence grows stale and the memories both of witnesses and of the mentally handicapped Habibzadah dim.

Our criminal justice system has a mechanism to deal with temporary incompetence as it pertains to criminal culpability, or scienter, but fails miserably when faced with the likely long-term or permanent mental illness of a criminal defendant. Even *Davis* acknowledges that confinement of an incompetent person may be a violation of due process, but only after the defendant has been civilly committed for the maximum sentence allowed under the charges filed, when the State does not have an interest that outweighs the defendant's liberty interest.

Our criminal justice system needs an earlier and intervening procedure to determine competency retroactively to the time of the alleged crime. Perhaps we as a society need to consider the concept of a defendant being *unchargeable* because of mental illness under Indiana Code section 35–41–3–6, and not just guilty but mentally ill under Indiana Code section 35–36–2–1, et seq. In either case, the commitment proceedings provided for in Indiana Code section 35–36–2–4 would both protect society and best care for the defendant involved.

Whether such a procedure is promulgated by the Indiana Supreme Court through its rule-making process or by the Indiana General Assembly through statute, it is time for the truly long-term, incompetent criminal defendant to have an earlier and intervening opportunity for a determination of his or her competency at the time of the crime alleged. Such a procedure convened soon after arrest, rather than years later when stale evidence and dim or non-

existent memories are all that are left, or never, would best serve society and the defendant.

904 N.E.2d at 369–71 (emphases original). We join our colleagues' concerns.

The judgment of the trial court is reversed and remanded with instructions to dismiss the charging information.

NAJAM, J., and MATHIAS, J., concur.