ATTORNEY FOR APPELLANT
Anna Onaitis Holden
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana



FILED
Jun 14 2011, 11:45 am
CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 49S02-1010-CR-620

ALVA CURTIS,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Marion Superior Court, No. 49F08-0706-FD-123880
The Honorable Barbara Collins, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 49A02-0911-CR-1106

**June 14, 2011**

**David, Justice.**

We hold that pending criminal charges do not violate a defendant's right to due process if (1) the trial court has not involuntarily committed the defendant and (2) the trial court has not made an appropriate finding that the defendant will never be restored to competency. We also hold that, under the facts of this case, the defendant has forfeited his constitutional speedy-trial claims but that the trial court should have granted the defendant's motion to dismiss and discharge under Indiana Criminal Rule 4(C).

## Facts and Procedural History

Alva Curtis is a fifty-nine-year-old man who was born with a developmental disability. He has suffered from a seizure disorder for many years.

Curtis attended school until the age of sixteen, but he completed only the fifth or sixth grade. Curtis can write his name, dress himself, and count to fifty. He cannot, however, perform simple calculations, go grocery shopping, or read. At one point, Curtis was employed as a janitor, but he is now unemployed and collects disability payments.

In June 2007, the State arrested Curtis and charged him with residential entry, battery, and criminal mischief. The State alleged that Curtis confronted his neighbor as the neighbor was walking home. According to the probable cause affidavit, Curtis ran to the neighbor's house, swung his fists at the neighbor, threw a stool through the door, threw a chair at the neighbor, and broke a keyboard. Twenty-nine days later, Curtis was released on his own recognizance.

Over the next eighteen-plus months, the State filed one motion and Curtis filed several: almost all were related to Curtis's competency. In February 2009, the trial court ordered a competency examination by two doctors. Both doctors submitted reports stating, among other things, that Curtis suffered from dementia and was not competent to stand trial. One doctor concluded that Curtis would "never be restored" to competency; the other concluded that it was "unlikely."

In May 2009, Curtis filed a motion to dismiss, arguing that the charges violate his due process right to fundamental fairness because he is incompetent and unlikely to regain competency. In response, the State claimed that the motion to dismiss was "premature" for a number of reasons: there had been no judicial determination of incompetency to stand trial; there was no order by the trial court committing Curtis to the Division of Mental Health and Addiction (DMHA); there was no finding that Curtis was unlikely to regain competency; and Curtis had been incarcerated for only one month during the pendency of the case. The State further argued that there was "sufficient public interest" in proceeding with the charges. The trial court denied the motion to dismiss but stated that Curtis will never become competent. The trial court also declined to commit Curtis to the DMHA.

In September 2009, Curtis filed a motion to dismiss and discharge under Indiana Criminal Rule 4(C). The trial court issued an order almost identical to its previous order: it denied defendant's motion, stated Curtis will never become competent, and declined to commit him to the DMHA. Curtis sought, and was granted, an interlocutory appeal of that order.

In his appellate brief, Curtis raised constitutional speedy-trial, Criminal Rule 4(C), and due process claims. The Court of Appeals found that the pending criminal charges violated Curtis's right to due process. Curtis v. State, 932 N.E.2d 204, 208 (Ind. Ct. App. 2010). Accordingly, the Court of Appeals reversed and remanded with instructions to dismiss the charging information. Id. at 210. The court did not address the constitutional speedy-trial and Criminal Rule 4(C) issues. We granted transfer.

### I. Speedy Trial

Curtis argues that the delay in bringing him to trial violates his right to a speedy trial as guaranteed by the United States and Indiana Constitutions.[1] The State counters that Curtis has forfeited his constitutional speedy-trial claims because Curtis raised the claims for the first time on appeal. For the reasons explained below, we agree with the State.[2]

Under Indiana Appellate Rule 14(B), a trial court must certify an order for interlocutory appeal. "Any issues that were properly raised in the trial court in ruling on the trial court's [certified interlocutory] order are available on interlocutory appeal." Harbour v. Arelco, Inc., 678 N.E.2d 381, 386 (Ind. 1997). We also find the converse to be true—that issues not properly presented to the trial court in ruling on the interlocutory order are unavailable on interlocutory appeal. See Baca v. RMP, Inc., 941 N.E.2d 547, 548 n.1 (Ind. Ct. App. 2011).

Curtis sought an interlocutory appeal of the trial court's September 2009 order, which denied Curtis's motion to dismiss and discharge under Indiana Criminal Rule 4(C). Nowhere in that motion did Curtis use language suggesting he was presenting a constitutional speedy-trial

---

[1] U.S. Const. amends. VI, XIV; Ind. Const. art. 1, § 12.

[2] At oral argument, Curtis's counsel conceded this point, stating that the speedy-trial issue "probably wasn't properly preserved because there was no speedy-trial argument made in the motion to dismiss."

claim.[3]  Likewise, the trial court's September 2009 order denying Curtis's motion to dismiss and discharge did not mention "speedy trial," the applicable provisions of either constitution, or anything comparable.

Curtis argues that his constitutional speedy-trial claims were preserved in his subsequent petition to certify the September 2009 order for interlocutory appeal.  We note that Curtis did, in this petition, state that the delay in bringing him to trial was "in direct violation of . . . [the] right to trial"[4] under the United States and Indiana Constitutions.  We further note that the trial court's certification order granting Curtis's petition uses the abbreviation H.I. when referring to the petition.[5]  H.I. stands for "Herein Insert"—thus the trial court's certification order seemingly incorporates all of the language from Curtis's petition.

---

[3] Although "Indiana Criminal Rule 4 generally implements the constitutional right of a criminal defendant to a speedy trial," Bridwell v. State, 659 N.E.2d 552, 553 (Ind. 1995), a speedy-trial claim under Rule 4(C) and a speedy-trial claim under either the federal or state constitution must be asserted separately and distinctly.  See State v. Moles, 166 Ind. App. 632, 646, 337 N.E.2d 543, 552 (1975) ("An accused . . . has two distinct but related rights to have the processes of justice move deliberately toward the end of obtaining a trial within a reasonable and agreeable time—one right is guaranteed by the Constitutions and one by . . . CR. 4.").  See generally Danks v. State, 733 N.E.2d 474, 490 (Ind. Ct. App. 2000), trans. denied ("[W]hether a defendant's constitutional right to a speedy trial has been violated presents a much more complex question than whether the Rule 4(C) speedy trial provision has been violated; the constitutional test requires the balancing of multiple factors . . . while Rule 4(C) provides definitive, relatively simply calculated deadlines . . . .").

[4] We note that Curtis's petition does not mention "speedy trial" but only "right to trial."  The petition also refers to Article 1, Section 13 of the Indiana Constitution and not Article 1, Section 12—the appropriate section to cite for a speedy-trial claim.  For purposes of our analysis, we will treat this as an oversight and consider the language as an attempt to raise a speedy-trial claim.

[5] The trial court's "Order Granting Certification of Interlocutory Appeal and Stay of Proceedings" states in part:

> COMES NOW the Court, Defendant, by counsel, having filed her Petition to Certify an Order for Interlocutory Appeal and to Stay Proceedings Pending the Outcome, said petition in the following words and figures, to wit:
>
> (H.I.)
>
> And the Court, being duly advised in the premises, now finds the issue involves a substantial question of law, a more orderly disposition of this case would be to decide the issue by interlocutory appeal and Defendant's remedy by appeal after judgment is inadequate.
>
> Defendant's petition is hereby GRANTED and it is, therefore, ORDERED, ADJUDGED AND DECREED that this Court's order, filed September 23, 2009, be certified for interlocutory appeal and the proceedings in the above-captioned cause be stayed pending the outcome of the interlocutory appeal.

Here the trial court granted Curtis's petition to certify its order for interlocutory appeal on the basis that the order involves a substantial question of law. Ind. Appellate Rule 14(B)(1)(c)(ii). "[T]here is nothing to prohibit the trial court from identifying the specific questions of law presented by the order for the appellate court's review." Budden v. Bd. of Sch. Comm'rs of Indianapolis, 698 N.E.2d 1157, 1166 n.14 (Ind. 1998). But any "specific questions of law presented by the order" must have been, in the first place, properly raised by Curtis before the trial court. And the trial court must have considered those issues in ruling on its interlocutory order. Thus, the trial court's blanket incorporation of Curtis's petition identifies for appellate review only issues that were previously presented to or considered by the trial court. To hold otherwise would allow a party to circumvent the well-established rule that issues must be raised before the trial court or are unavailable on appeal. See, e.g., Pigg v. State, 929 N.E.2d 799, 803 (Ind. Ct. App. 2010), trans. denied. In short, Curtis's constitutional speedy-trial claims have been forfeited.

In his reply brief, Curtis raises a new argument: even if his constitutional speedy-trial claims were not properly preserved, "the speedy trial deprivations . . . constitute fundamental error" and require dismissal of his case. Although an issue is generally waived on appeal if not raised at the trial level, an appellate court may address the issue if a party alleges fundamental error occurred. James v. State, 613 N.E.2d 15, 25 (Ind. 1993). But parties may not raise an issue, such as fundamental error, for the first time in a reply brief. See App. R. 46(C); see, e.g., Ross v. State, 429 N.E.2d 942, 945 (Ind. 1982). Because Curtis failed to allege fundamental error in his principal appellate brief, this issue is waived.

## II. Indiana Criminal Rule 4(C)

Curtis further contends that he is entitled to discharge under Indiana Criminal Rule 4(C). Criminal Rule 4(C) "provides that a defendant may not be held to answer a criminal charge for greater than one year unless the delay is caused by the defendant, emergency, or court congestion."[6] Pelley v. State, 901 N.E.2d 494, 497 (Ind. 2009). We review a trial court's ruling on a

---

[6] Indiana Criminal Rule 4(C) provides as follows:

> No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is

Rule 4(C) motion for abuse of discretion. <u>Bowman v. State</u>, 884 N.E.2d 917, 919 (Ind. Ct. App. 2008), <u>trans. denied</u>.

The following chart outlines the dates and occurrences relevant to our analysis:

| Date | Occurrence |
| --- | --- |
| June 28, 2007 | State charges Curtis. |
| July 26, 2007 | Curtis is released on his own recognizance. |
| August 30, 2007 | Curtis requests a competency evaluation. |
| September 27, 2007 | Trial court cancels evaluation on Curtis's request. |
| February 14, 2008 | Trial court sets jury trial for March 19, 2008. |
| February 27, 2008 | Curtis files a motion to suppress. |
| March 4, 2008 | Trial court sets evidentiary hearing on Curtis's motion to suppress for March 19, 2008, and continues trial. |
| March 19, 2008 | Trial court grants the motion to suppress and sets a pretrial conference for April 3, 2008. |
| March 31, 2008 | State files a motion for a competency evaluation of Curtis. |
| March 31, 2008 | Trial court "decline[s] to rule" on the State's motion. |
| April 3, 2008 | Trial court grants a continuance on its own motion. |

later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar; provided, however, that in the last-mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as under subdivision (A) of this rule. Provided further, that a trial court may take note of congestion or an emergency without the necessity of a motion, and upon so finding may order a continuance. Any continuance granted due to a congested calendar or emergency shall be reduced to an order, which order shall also set the case for trial within a reasonable time. Any defendant so held shall, on motion, be discharged.

| October 16, 2008 | Curtis orally moves to exclude a witness and requests a continuance. |
|---|---|
| January 15, 2009 | At the motion hearing, Curtis orally moves for a competency evaluation. |
| February 13, 2009 | Trial court orders a competency examination by two doctors. |
| March 2, 2009 | The first doctor submits his report. |
| March 20, 2009 | Curtis requests a continuance. |
| April 3, 2009 | The second doctor submits his report. |
| May 8, 2009 | Curtis files a motion to dismiss under due process. |
| May 14, 2009 | Curtis requests a continuance. |
| July 7, 2009 | Curtis requests a continuance. |
| August 26, 2009 | Trial court denies Curtis's motion to dismiss. |
| September 4, 2009 | Curtis files a motion to dismiss and discharge under Indiana Criminal Rule 4(C). |

The relevant time period is from the date Curtis was charged until the date he filed his motion to dismiss and discharge under Criminal Rule 4(C): this equals 799 days.

The State concedes that 228 days count toward the Rule 4(C) one-year period: the time between June 28, 2007, and August 30, 2007; the time between September 27, 2007, and February 27, 2008; and the time between March 19, 2008, and March 31, 2008. Thus, according to the State, the remaining 571 days fall under an exception to the rule that allows for an extension of the one-year time period. Curtis counters that only 260 days are chargeable to delays caused by him but that the remaining days count toward the Rule 4(C) period. It is unclear which specific periods Curtis concedes are attributable to him. To resolve this dispute, we must evaluate how each occurrence affects the Rule 4(C) one-year period.

It is important to briefly state how this evaluation is done. Delays caused by the defendant technically extend the Rule 4(C) one-year time period. Ind. Crim. Rule 4(F). Under Rule 4(C), delays for emergency or court congestion do not count toward the one-year period, but Rule 4(F) does not explicitly state that those delays extend the one-year period. In the end, tacking on additional time to the one-year period and excluding days from the one-year period are one and the same. This case presents numerous occurrences that affect a Rule 4(C) analysis. Thus, for ease of analysis, we decide whether the time not attributable to defendant's delays, court congestion, or emergency exceeds 365 days.

When the State charged Curtis, the Rule 4(C) period was triggered. The State does not—and could not—dispute that the next 63 days count toward the period. Curtis then requested a competency evaluation, which the trial court later canceled on his request. This Court has consistently found that delays attributable to a defendant's claim of incompetency are charged against the defendant for Rule 4(C) purposes. See, e.g., Baldwin v. State, 274 Ind. 269, 271, 411 N.E.2d 605, 606 (1980). Thus, the time period between the request and cancellation is attributable to Curtis. The State concedes that the trial court's cancellation of the competency evaluation restarted the Rule 4(C) period, and no delays within the next five months can be considered attributable to Curtis, emergency, or court congestion. Accordingly, another 153 days count toward the Rule 4(C) period.

At this point, Curtis filed a motion to suppress, which the trial court granted a few weeks later. The State contends that the period while Curtis's suppression motion was pending is attributable to Curtis, but the State does not offer support for its argument. Under Criminal Rule 4(C), a defendant is charged with delay caused by his actions. But a motion to suppress is not automatically considered a delay attributable to the defendant under Rule 4(C): "the mere filing of a motion to suppress does not of itself engender any delay . . . within the period of the rule." Moreno v. State, 166 Ind. App. 441, 455 n.10, 336 N.E.2d 675, 684 n.10 (1975). "[W]hen determining the *extent* of the delay caused by the defendant's actions, we must proceed on a case-by-case basis." Wheeler v. State, 662 N.E.2d 192, 194 (Ind. Ct. App. 1996) (emphasis added). Under the facts of this case, we find the time between the filing of the motion to suppress and the trial court's ruling on the motion is attributable to Curtis. Although the motion was not a dilatory tactic, Curtis filed it approximately three weeks before trial was set. In the motion, Curtis asked

8

that the trial court set the matter for a hearing prior to the trial date. But Indiana Trial Rule 53.1 affords trial courts more time—and reality likely requires more time—to deal with motions. The setting of a trial date is not determinative of what delays are chargeable to the defendant, see Cook v. State, 810 N.E.2d 1064, 1066–67 (Ind. 2004), but a pretrial motion's proximity to a set trial date weighs in favor of attributing a delay to a defendant.

Once the trial court ruled on the motion to suppress, the Rule 4(C) period began again, and the State concedes this. The State filed a motion for a competency evaluation 12 days after the trial court ruled on Curtis's motion to suppress. Thus, 12 additional days count toward the Rule 4(C) period, bringing the total to 228 days.

The State argues that once it filed its motion for a competency evaluation of Curtis, all subsequent delays were attributable to Curtis. Specifically, the State argues that because the trial court declined to rule on this motion, which was made in good faith, it would be "unfair" to count the time the motion remained pending toward the Rule 4(C) period. Thus, the State contends that the next 571 days are chargeable to Curtis.

The State did, in fact, make its motion for a competency evaluation of Curtis in good faith. Evidence at the suppression hearing revealed that Curtis's mental status was deteriorating, prompting the State's motion for a competency evaluation to determine whether Curtis could proceed to trial. See State v. Davis, 898 N.E.2d 281, 284 (Ind. 2008) ("Due process precludes placing a defendant on trial while she is incompetent.").

When claims of incompetency are initiated by a defendant, the delays are chargeable to him or her. Id. at 286 n.3. Today we need not decide whether delays from the *State's* good-faith motion for a defendant's competency evaluation are attributable to the defendant under Rule 4(C). Subsequent acts by the trial court, and not this motion, are determinative of whether Curtis has a valid 4(C) claim.

In this case, after the State filed its motion, the trial court "declined to rule on that motion at that time." It is unclear from the record why. Then several days later, the trial court granted a continuance on its own motion. Again, nothing from the record reveals why. Over six months passed with no action from the State, Curtis, or the trial court until Curtis orally moved to ex-

clude a witness. From then, it is indisputable that numerous delays are attributable to Curtis. But Curtis had already been entitled to discharge.

As stated above, court congestion or emergency does not count toward the Criminal Rule 4(C) period. But in this case, there is no indication in the record of court congestion or emergency. We "may not attribute delays in proceeding to trial to the defendant where the record is void regarding the reason for the delay." Alter v. State, 860 N.E.2d 874, 878 (Ind. Ct. App. 2007). Accordingly, we cannot conclude that this six-month delay falls under an exception to the rule. See Isaacs v. State, 673 N.E.2d 757, 763 (Ind. 1996).

We recognize that the State contends it should not be "faulted" because the trial court declined to rule on its motion. But the focus of Criminal Rule 4 is not fault; it is to ensure early trials. Carr v. State, 934 N.E.2d 1096, 1100 (Ind. 2010) ("The Rule does not involve assessment or attribution of any fault or accountability on the part of the State, but generally imposes upon the justice system the obligation to bring a defendant to trial within a set time period . . . ."). The rule places an affirmative duty on the State to bring Curtis to trial and allows for limited exceptions to that timeframe. See Cook, 810 N.E.2d at 1065. Because none of those exceptions apply to the six-month period following the continuance at issue, the days must count toward the Rule 4(C) one-year period. And because the days that count toward the Rule 4(C) period exceed 365, the trial court should have granted Curtis's motion to dismiss and discharge.

### III. Due Process

Curtis also contends that the pending charges against him violate his right to fundamental fairness as guaranteed by the Fourteenth Amendment to the United States Constitution. The Court of Appeals agreed with this argument and accordingly ordered dismissal of the charges. Although Curtis is entitled to dismissal under Indiana Criminal Rule 4(C), we do not agree that he is entitled to dismissal on fundamental-fairness grounds. Thus we write to explain why the facts of Curtis's case do not rise to the level of a due process violation.

In State v. Davis, this Court "examine[d] . . . whether it is a violation of fundamental fairness to hold criminal charges over the head of an incompetent defendant who will never be able to stand trial." 898 N.E.2d at 283. In Davis, the State charged the defendant with criminal

10

recklessness.  Id. at 283.  The defendant filed a motion for a competency evaluation, which the trial court granted.  Id.  After two doctors found the defendant not competent to stand trial, the trial court committed the defendant to the DMHA.  Id. at 283–84.  Over approximately the next thirty-three months, the defendant was confined in psychiatric institutions.  Id. at 284.

The trial court then received a letter from the chief medical officer of the institution where the defendant was committed at the time, stating that the defendant would never be restored to competency.  Id.  The defendant filed a motion to dismiss the pending charges, arguing that her hospitalization was "tantamount to incarceration" because she had "accrued more days than the maximum possible confinement she could receive should she eventually be convicted." Id.  The trial court granted the motion.  Id.

On appeal, we noted that application of the Due Process Clause is "'an uncertain enterprise which must discover what "fundamental fairness" consists of in a particular situation by first considering any relevant precedents and then by assessing the several interests that are at stake.'"  Id. at 287 (quoting Lassiter v. Dept. of Soc. Servs. of Durham County, N.C., 452 U.S. 18, 24–25 (1981)).  We then noted that there was no relevant precedent in Indiana on "whether there is an inherent denial of due process in holding pending criminal charges indefinitely over the head of one who will never have a chance to prove her innocence."  Id.

After evaluating the various interests at stake under the particular facts of the case, we affirmed the trial court and concluded as follows:

> Because Davis' pretrial confinement has extended beyond the maximum period of any sentence the trial court can impose, and because the State has advanced no argument that its interests outweigh Davis' substantial liberty interest, we conclude it is a violation of basic notions of fundamental fairness as embodied in the Due Process Clause of the Fourteenth Amendment to hold criminal charges over the head of Davis, an incompetent defendant, when it is apparent she will never be able to stand trial.

Id. at 290.

In Curtis's case, the Court of Appeals noted that (1) Curtis had not been committed or confined by the State and (2) the time that had elapsed since Curtis's arrest had not exceeded the maximum imposable sentence.  Curtis, 932 N.E.2d at 207.  But the court determined that this was "a distinction without a difference" from the facts of Davis.  Id. at 208.  The Court of Ap-

11

peals concluded that because there was no dispute that Curtis will remain incompetent, it violated due process to allow criminal charges to hang over Curtis's head for the rest of his life. Id.

The State argues that <u>Davis</u> was predicated on two critical facts not present in Curtis's case and that this distinction does, in fact, matter. The State further argues that the legislature has mandated the procedures for determinations of competency—procedures that were not followed in this case. As a result, the State contends that the Court of Appeals opinion sets forth an unsound rule: "when doctors initially opine that a defendant is unlikely to ever become competent, charges must be immediately dismissed." We find these arguments compelling in light of the relevant precedent and the various interests at stake.

Statutes control the appropriate way to determine a defendant's competency and, if necessary, to commit the defendant and provide restoration services. Indiana Code section 35-36-3-1 (Supp. 2010)[7] establishes the procedures to determine a defendant's competency to stand tri-

---

[7] Indiana Code section 35-36-3-1 provides in part:

> (a) If at any time before the final submission of any criminal case to the court or the jury trying the case, the court has reasonable grounds for believing that the defendant lacks the ability to understand the proceedings and assist in the preparation of a defense, the court shall immediately fix a time for a hearing to determine whether the defendant has that ability. The court shall appoint two (2) or three (3) competent, disinterested:
>
> > (1) psychiatrists; or
> >
> > (2) psychologists endorsed by the Indiana state board of examiners in psychology as health service providers in psychology.
>
> At least one (1) of the individuals appointed under this subsection must be a psychiatrist. However, none may be an employee or a contractor of a state institution (as defined in IC 12-7-2-184). The individuals who are appointed shall examine the defendant and testify at the hearing as to whether the defendant can understand the proceedings and assist in the preparation of the defendant's defense.
>
> (b) At the hearing, other evidence relevant to whether the defendant has the ability to understand the proceedings and assist in the preparation of the defendant's defense may be introduced. If the court finds that the defendant has the ability to understand the proceedings and assist in the preparation of the defendant's defense, the trial shall proceed. If the court finds that the defendant lacks this ability, it shall delay or continue the trial and order the defendant committed to the division of mental health and addiction. The division of mental health and addiction shall provide competency restoration services or enter into a contract for the provision of competency restoration services by a third party . . . .

al.[8] Those procedures include a hearing and the opportunity for both sides to present relevant evidence on the defendant's competency to stand trial. Ind. Code § 35-36-3-1(b). If the trial court finds a defendant incompetent, the trial court must commit the defendant to the DMHA, and the DMHA must provide competency services. Id. Within ninety days, the superintendent of the institution where the defendant is committed must certify to the trial court whether the defendant has a "substantial probability" of attaining competency. Ind. Code § 35-36-3-3(a) (2008). If there is no substantial probability, then regular commitment proceedings are initiated. Id. § 35-36-3-3(b). If there is a substantial probability, the DMHA has another ninety days to continue providing competency services. Id.

The procedures establish a comprehensive method that balances the various interests at stake. Involuntary commitment is a clear deprivation of the defendant's liberty that can be justified only on the basis of legitimate state interests. Davis, 898 N.E.2d at 288. The State has dual interests in committing an incompetent defendant: (1) to restore the accused to competency due to the "right of the public and the defendant to the prompt disposition of criminal charges pending against him" and (2) to protect the defendant "against being required to answer to charges that she lacks the capacity to understand or assist her attorney in defending against." Id. at 289. Of course, the State's interests cannot be realized if there is a finding that a defendant cannot be restored to competency. But that is not the case here.

Here, the trial court neither has found Curtis incompetent under Indiana Code section 35-36-3-1 nor has committed him. Accordingly, there has been no opportunity for a proper finding that Curtis will never be restored to competency as there was in Davis. We recognized in Davis that "due process 'is not a technical conception with a fixed content unrelated to time, place and circumstances.'" Id. at 287 (quoting Lassiter, 452 U.S. at 24). Although there may be factual scenarios that differ from Davis and yet still amount to due process violations, this is not one of them. There is no viable fundamental-fairness argument when Curtis has not been involuntarily committed and when there has been no appropriate finding that he will never be restored to competency. Those two facts alone take Curtis's case outside the parameters of a due process viola-

[8] We note that Indiana Code section 35-36-3-1 has recently been amended by Public Law 151-2011, and the amendments take effect on July 1, 2011. These amendments relate to the professionals authorized to make competency determinations and their qualifications and would not affect our analysis in this case. See 2011 Ind. Legis. Serv. P.L. 151-2011 (West).

tion, and we need not address the State's additional contention—that it has an interest in obtaining a resolution of Curtis's guilt or innocence because the time that had elapsed since Curtis's arrest had not exceeded the maximum imposable sentence. Thus, dismissal of the charges on fundamental-fairness grounds is not warranted.

## Conclusion

Curtis has waived his constitutional speedy-trial claims and does not have a valid due process claim on fundamental-fairness grounds. Curtis is however entitled to dismissal under Indiana Criminal Rule 4(C). Accordingly, we reverse the judgment of the trial court and remand with instructions to dismiss the charging information.

Shepard, C.J., and Dickson, Sullivan, and Rucker, JJ., concur.