**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MARK K. PHILLIPS**
Boonville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ANTHONY HALL, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 87A01-1110-CR-498 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE WARRICK SUPERIOR COURT
The Honorable Robert R. Aylsworth, Judge
Cause No. 87D02-1105-FB-238

**June 28, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Anthony Hall appeals his convictions for confinement, as a Class B felony; criminal recklessness, as a Class D felony; invasion of privacy, as a Class A misdemeanor; and domestic battery, as a Class A misdemeanor. Hall raises three issues for our review, which we restate as follows:

1. Whether the trial court committed fundamental error when it permitted the State to introduce into evidence Hall's admissions during a custodial interrogation;

2. Whether the State's entire case against him is based on incredibly dubious evidence; and

3. Whether we will issue an advisory opinion on the scope of the trial court's no-contact order.

We hold that Hall has not demonstrated fundamental error and that the incredible dubiosity rule does not apply here. We also decline Hall's request for an advisory opinion. Thus, we affirm Hall's convictions.

## FACTS AND PROCEDURAL HISTORY

In December of 2010, Laura Hall and Hall separated after eighteen years of marriage. The two had three children together. In January of 2011, Laura obtained a protective order against Hall.

On the morning of May 18, 2011, Hall broke into Laura's residence after their three children had left for school. He went to the room of his oldest son, E.H., and retrieved a firearm. He then saw pictures of Laura's new boyfriend and became enraged.

Hall burst into Laura's bedroom, where she was sleeping, and yelled at her for ruining his life. Laura attempted to call the police, but Hall smashed the phone. He then

2

beat her about her face and arms with a wooden club, which caused Laura to black out. At some point thereafter, Laura saw Hall standing over her and firing E.H.'s gun into her bed. Hall told her that she was going to die. He then left the room, but came back and kicked her.

Eventually, Laura convinced Hall to let her call 9-1-1 by telling him that she would lie to the police and tell them that she hurt herself falling. Hall let her call the police while he left her residence. A neighbor then heard Laura's screams for help and came to her aid while Laura waited for an ambulance. At the hospital, Laura received three staples in her head for the wounds caused by Hall hitting her with the club.

Warrick County Sheriff's Department Officer Bryan Flowers arrested Hall later that day at Hall's mother's house in Jasper. Officer Flowers read Hall his <u>Miranda</u> rights and then transported him to the Boonville jail. Hall was taken to an interview room where he was again read his <u>Miranda</u> rights. Hall then admitted to Detective Paul Kruse that he knew of the protective order and that he had hit Laura with the club. Meanwhile, Hall's mother consented to a search of her residence, and she helped officers locate E.H.'s firearm. And at Laura's home, officers found a bullet hole in Laura's mattress as well as blood stains on the bedroom carpet.

On May 19, the State charged Hall with multiple counts. At his ensuing trial in September, the State offered Hall's May 18 interrogation statements into evidence without objection. Laura also testified as to the events on the day of the attack. The jury found Hall guilty of confinement, as a Class B felony; criminal recklessness, as a Class D felony; invasion of privacy, as a Class A misdemeanor; and domestic battery, as a Class

3

A misdemeanor. The trial court entered its judgment of conviction and sentence accordingly. This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Interrogation Statements

Hall first argues that his confession during the May 18 police interrogation was inadmissible. The State responds that, to succeed on this claim, Hall must demonstrate fundamental error since he did not make a contemporaneous objection to this evidence at his trial. See Cutter v. State, 725 N.E.2d 401, 406 (Ind. 2000). The "fundamental error" exception to appellate review is "an extremely narrow one, available only when the record reveals clearly blatant violations of basic and elementary principles of due process, and the harm or potential for harm cannot be denied." Canaan v. State, 683 N.E.2d 227, 235 n.6 (Ind. 1997), cert. denied, 524 U.S. 906 (1998) (quotations and alteration omitted). "This exception is available only in egregious circumstances." Brown v. State, 929 N.E.2d 204, 207 (Ind. 2010) (quotations omitted).

Hall cannot demonstrate fundamental error on this issue. First, he does not argue fundamental error in his appellate brief. As such, the issue is waived. Ind. Appellate Rule 46(A)(8)(a); Curtis v. State, 948 N.E.2d 1143, 1148 (Ind. 2011) ("parties may not raise an issue, such as fundamental error, for the first time in a reply brief."). Second, our supreme court has held that, to demonstrate fundamental error in the admission of allegedly ill-gotten evidence, the appellant must show something more than the mere illegality of the evidence; he must present evidence that calls into question his actual guilt. Brown, 929 N.E.2d at 207 ("We do not consider that admission of unlawfully

4

seized evidence ipso facto requires reversal. Here, there is no claim of fabrication of evidence or willful malfeasance on the part of the investigating officers and no contention that the evidence is not what it appears to be. In short, the claimed error does not rise to the level of fundamental error."). Hall makes no claim that his admissions were false or that that evidence was otherwise "not what it appears to be." Id.

Third, Hall's assertion his admissions were unlawfully obtained is without merit. He was twice read his Miranda rights, and he never invoked his right to counsel. And his claim on appeal that he was intoxicated during the interrogation is not supported by citations to authority to demonstrate that this is a valid basis for fundamental error. See App. R. 46(A)(8)(a). Neither is this claim supported by citations to the record to demonstrate that his alleged consumption of alcohol actually impaired him. See id. In sum, Hall cannot prevail on this issue.

**Issue Two: Incredibly Dubious Testimony**

Hall next avers that the trial court erred when it failed to intervene in the State's case based on the State's incredibly dubious witnesses. As our supreme court recently stated:

> In addressing a claim of insufficient evidence, an appellate court must consider only the probative evidence and reasonable inferences supporting the judgment, without weighing evidence or assessing witness credibility, and determine therefrom whether a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. Appellate courts may, however, apply the "incredible dubiosity" rule to impinge upon a fact finder's function to assess the credibility of a witness. Application of this rule is very narrow and permitted only "where a sole witness presents inherently contradictory testimony that is equivocal or coerced and there is a lack of circumstantial evidence of guilt."

Turner v. State, 953 N.E.2d 1039, 1059 (Ind. 2011) (citations omitted).

5

Hall's reliance on the incredible dubiosity rule is misplaced. He argues that the State's multiple witnesses were each incredibly dubious. But the incredible dubiosity rule only applies where "a sole witness" testifies <u>and</u> there is a lack of circumstantial evidence. <u>Id.</u> Here, the State called multiple witnesses, found E.H.'s firearm at the residence of Hall's mother, and presented evidence of Laura's wounds and blood stains at the scene. Thus, the incredible dubiosity rule does not apply.

### Issue Three: No-Contact Order

Last, Hall complains that the trial court imposed a no-contact order such that he cannot contact Laura. Hall's concern is that this will prevent him from interacting with their children, who live with Laura. As such, Hall requests that we "clarify that the order does not relate to the children and that [he] should be permitted to contact his children." Appellant's Br. at 14.

The State asserts that we lack subject matter jurisdiction over Hall's argument because "this is not a divorce court where visitation rights are adjudicated." Appellee's Br. at 19. But the order was entered by the trial court at the conclusion of Hall's criminal trial, which he now appeals. Thus, we have subject matter jurisdiction.

Nonetheless, we agree with the State's alternative argument that Hall seeks an advisory opinion, which we will not issue. <u>Reed v. State</u>, 796 N.E.2d 771, 775 (Ind. Ct. App. 2003) ("This court does not render advisory opinions."). Hall acknowledges that the no-contact order "is limited to [Laura]." Appellant's Br. at 14. Thus, as the State says, "there is no reason" for this court "to repeat the trial court's order to confirm that

the trial court meant what it ordered." Appellee's Br. at 19. We decline Hall's request to review this issue.

## Conclusion

In sum, Hall cannot show that the trial court committed fundamental error when it permitted the State to introduce his admissions at trial. Hall's claim that the State's entire case against him is incredibly dubious is without merit. And we will not review Hall's request to clarify the trial court's unambiguous no-contact order. We affirm Hall's convictions in all respects.

Affirmed.

RILEY, J., and DARDEN, J., concur.