## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jun 18 2015, 6:14 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Jeffrey E. Stratman | Gregory F. Zoeller |
| Aurora, Indiana | Attorney General of Indiana |
| | |
| | Karl M. Scharnberg |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Despina N. Manologlou, | June 18, 2015 |
| *Appellant-Defendant,* | Court of Appeals Case No. 58A01-1410-CR-469 |
| v. | Appeal from the Ohio Circuit Court |
| | Lower Court Cause No. 58C01-1310-FA-6 |
| State of Indiana, | |
| *Appellee-Plaintiff.* | The Honorable James D. Humphrey, Judge |

**Pyle, Judge.**

## Statement of the Case

[1]     Appellant/Defendant, Despina N. Manologlou ("Manologlou"), appeals her sentence of fifteen (15) years executed for her conviction of Class B felony

conspiracy to commit child molesting.[1] She argues that her sentence is inappropriate in light of the nature of her offense and character. We disagree and conclude that the trial court's sentence is not inappropriate.

[2] We affirm.

## Issue

> Whether Manologlou's sentence is inappropriate in light of the nature of her offense and her character.

## Facts

[3] On September 24, 2013, Manologlou, a thirty-one-year-old woman, wrote a note to H.W., a seventeen-year-old girl, and asked H.W. to text her. Manologlou sent the note home with H.W.'s younger brother to give to H.W. H.W. texted Manologlou, and Manologlou proposed that H.W. have sexual intercourse with H.W's boyfriend in front of Manologlou's male friend for money. Manologlou said that the man was going to pay Manologlou for setting up the arrangement, and she would give some of the money to H.W. for participating. H.W. told her that she would not participate and that the proposal had made her boyfriend upset. Manologlou asked H.W. if she knew of someone who would be interested, and H.W. stated that she did not know. Manologlou then asked H.W. if she had a camera that could be connected to a

---

[1] IND. CODE § 35-50-2-5. We note that, effective July 1, 2014, a new version of this conspiracy to commit child molesting statute was enacted and that Class B felony conspiracy to commit child molesting is now a Level 3 felony. Because Manologlou committed her crime in 2013, we will apply the statute in effect at that time.

laptop, and H.W. told her that she did not and asked Manologlou to "leave her alone." (Tr. 46). Manologlou apologized for bothering her and ended the conversation. Immediately following the text message conversation, H.W. went to the police station and reported it to Officer Norman Rimstidt ("Officer Rimstidt"), an officer with the Rising Sun Police Department. Manologlou texted H.W. the next day, asking if she had given her number out to anyone, but H.W. did not respond.

[4] On the same day that Manologlou had texted her original proposal to H.W., Manologlou also texted T.W., H.W.'s stepmother, telling her that she wanted to discuss something with her and that she was coming over to her house. Manologlou went to T.W.'s house and made the same proposition to her that she had made to H.W. T.W. declined the offer, and Manologlou then angrily insulted T.W. and her roommate. Later that evening, Manologlou texted T.W., but she did not respond.

[5] On September 25, 2013, Officer Rimstidt, pretending to be a thirteen-year-old girl named "Jenny," contacted Manologlou via text message. "Jenny" told Manologlou that she had received her number from a friend and that she was interested in making some money. Manologlou proposed the same idea to "Jenny" that she had proposed to H.W. and T.W. Manologlou told "Jenny" that if she would have sex with her boyfriend in front of Manologlou's male friend, she would be compensated with $3,000. "Jenny" agreed to participate, but she informed Manologlou that she could not drive to the location because she was only thirteen years old. Manologlou informed "Jenny" that it was

okay, offered to pick her up, and told her that she had condoms. They agreed to meet that night.

[6] Officer Rimstidt arranged for one of his secretaries to pose as "Jenny," and she made two phone calls to Manologlou. In the first phone conversation, "Jenny" and Manologlou confirmed that they were meeting up that evening and confirmed the location. They also discussed putting Manologlou's male friend on a three way call. They added the man on the first phone call conversation, but he never spoke. The male was later identified as Robert Wilt ("Wilt"). In the second phone conversation, "Jenny" and Manologlou discussed when "Jenny" would be paid. Manologlou told "Jenny" that she would not have the money that evening, but she would text her once she received it from Wilt.

[7] Based on these conversations, Officer Rimstidt obtained a warrant to search Manologlou's cell phone records. After serving the search warrant, he interviewed Manologlou, who admitted that Wilt had offered to pay her $10,000 if she arranged for someone to engage in sexual intercourse in front of him. She also admitted to proposing the agreement to H.W., T.W., and "Jenny," whom she believed was thirteen years old. After the interview with Manologlou, Officer Rimstidt spoke with Wilt, and Wilt informed him that Manologlou had offered to masturbate her minor son on camera for the money.

[8] On October 10, 2013, the State charged Manologlou with two counts of Class B felony attempt to commit promoting prostitution; Class C felony attempt to commit promoting prostitution; Class A felony conspiracy to commit child

molesting; and Class C felony conspiracy to commit child exploitation. On August 22, 2014, the trial court granted the State's motion to amend the Class A felony conspiracy to commit child molesting charge to a Class B felony, and Manologlou pled to the amended charge. The State dismissed the remaining charges in exchange for her guilty plea and her agreement to testify against Wilt.[2]

[9] At the sentencing hearing, the court found that Manologlou's guilty plea was a mitigating factor, but concluded that her prior criminal history and the nature and circumstances of her offense were aggravating factors. The trial court sentenced Manologlou to fifteen (15) years in the Department of Correction and ordered her to register as a sex offender for life. Manologlou now appeals. We will provide additional facts as necessary.

## Decision

[10] On appeal, Manologlou argues that her sentence is inappropriate in light of the nature of her offense and her character, and she requests that we revise her sentence pursuant to Indiana Appellate Rule 7(B).[3] She requests that we suspend a portion of her sentence through probation.

---

[2] Wilt, Manologlou's codefendant, was charged with two counts of Class B felony attempt to commit promoting prostitution; Class C felony attempt to commit promoting prostitution; Class A felony conspiracy to commit child molesting; and Class C felony conspiracy to commit child exploitation.

[3] Manologlou also makes several arguments concerning the weight that the trial court assigned to the aggravating and mitigating factors. We note that trial courts are no longer required to "weigh" aggravating

[11] Under Appellate Rule 7(B), this Court is granted the authority to revise a sentence if, after due consideration of the trial court's decision, we find that it is inappropriate in light of the nature of the offense and the character of the offender. *Childress v. State*, 848 N.E.2d 1073, 1079-80 (Ind. 2006). In reviewing the appropriateness of a sentence, we consider the defendant's culpability, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). We recognize the unique perspective a trial court has when making its decision, and that "the principal role of appellate review should be to attempt to leaven the outliers and to identify some guiding principles for trial courts and those charged with improvement of the sentencing statues, but not to achieve a perceived 'correct' result in each case." *Id.* at 1225. The burden of persuading this Court that the sentence has met the inappropriateness standard of review is on the defendant. *Childress*, 848 N.E.2d at 1080.

[12] The advisory sentence is the starting point of our review. *Id.* at 1081. Under INDIANA CODE § 35-50-2-5, a person who commits a Class B felony shall be imprisoned for a fixed term between six (6) years and twenty (20) years, with the advisory sentence being ten (10) years. Manologlou was sentenced to

---

and mitigating factors. *Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). Therefore, we need not address these arguments.

fifteen (15) years, which is five (5) years above the advisory sentence, and she contends that her sentence is inappropriate.[4]

[13] Regarding the nature of the offense, Manologlou claims that the trial court should not have sentenced her to fifteen (15) years. She acknowledges that she propositioned a woman and underage children to engage in sexual activity, but she asserts that the nature of her crime was not "particularly disturbing" because no sexual acts actually took place. (Manologlou's Br. 89). Manologlou also argues that although her crime involved her willingness to proposition a girl, whom she believed to be thirteen years old, to engage in sexual activities with someone in front of Wilt, the nature of the offense was lessened because that communication was initiated by the police. We disagree.

[14] Manologlou approached multiple people with her proposition for them to have sexual intercourse in front of Wilt for money. Once H.W. rejected her, she asked H.W. if she had any friends who would be interested. Similarly, she insulted T.W. when she refused to participate. Determined to find someone to be a participant, when contacted by "Jenny", whom she believed to be a thirteen-year-old girl, Manologlou asked her to engage in the sexual activity. In fact, though "Jenny" informed Manologlou of her age and that she could not

---

[4] In Manologlou's Reply Brief, she asserts the new argument that the nature of the offense did not warrant her sentence, because although "Jenny" was thirteen years old, the age of the victim was a statutory element of her offense. However, according to Indiana Appellate Rule 46(C), no new issues shall be raised in the reply brief. *See also*, *Curtis v. State*, 948 N.E.2d 1143, 1148 (Ind. 2011).

drive to the location, Manologlou assured "Jenny" that it was okay and that she could pick her up and provide condoms. Manologlou's interactions showed that she was bound and determined to find someone to participate in the arrangement, even if that participant was a thirteen-year-old girl.

[15] As to Manologlou's character, the record reveals an escalating trend in criminal behavior. For example, her prior criminal history consists of a Class D felony theft conviction from 2008 and a false informing misdemeanor in 2010 that was dismissed through her participation in a pre-trial diversion agreement. Manologlou points out that she successfully completed the probationary terms of her felony theft conviction and that the conviction was unrelated to her current conviction. However, although Manologlou completed her probation without revocation, she completed it only because the State chose to not file a petition to revoke her probation when she committed a new offense. In addition, the trial court noted that Manologlou's willingness to masturbate her own son on camera to obtain the money from Wilt speaks to the poor nature of her character.

[16] Manologlou has not persuaded us that her sentence is inappropriate in light of the nature of her offense and her character. Therefore, we affirm the trial court's sentencing decision.

[17] Affirmed.

Crone, J., and Brown, J., concur.