## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 05 2018, 8:10 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Anthony C. Lawrence
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Michael Eugene Ritter,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

September 5, 2018

Court of Appeals Case No.
48A02-1711-CR-2744

Appeal from the Madison Circuit
Court

The Honorable Thomas L. Clem,
Judge

Trial Court Cause No.
48E02-0608-FD-353

**Altice, Judge**

# Case Summary

Michael Ritter appeals his convictions of false informing as a Class B misdemeanor and operating a vehicle while intoxicated as a Class D felony, and the determination that he was an habitual substance offender. He also appeals the aggregate sentence imposed of six years in the Indiana Department of Correction (DOC). He presents the following issues for our review, which we expand and restate as:

1.  Whether the trial court erred in denying his motion to dismiss pursuant to Criminal Rule 4(C);

2.  Whether he was denied his right to a speedy trial; and

3.  Whether his six-year sentence is inappropriate.

We affirm.

# Facts & Procedural History

In the early morning of August 25, 2006, Elwood Police Officer Nicholas Oldham was patrolling the streets when he observed a vehicle traveling on the wrong side of the road. Officer Oldham initiated a traffic stop and approached the vehicle. When he began speaking with the driver, Ritter, he smelled alcohol and noticed that Ritter had watery, bloodshot eyes, and slurred speech.

Ritter told Officer Oldham that he did not have a driver's license. He provided the officer with his correct first and last name but gave a different middle initial, an incorrect birth date, and an incorrect social security number. Officer

Oldham asked Ritter several times for his date of birth and social security number. Each time, however, Ritter provided the same incorrect information. The officer also asked Ritter for his age, but the age Ritter provided did not match the year of birth he gave the officer. The officer then asked Ritter to step out of the vehicle so that he could perform field sobriety tests. Ritter failed the horizontal gaze nystagmus test, the walking heel to toe test, and the balancing on one leg test.

Ritter was transported to the police station. In an effort to determine Ritter's true identify, Officer Oldham made telephone calls to different police agencies. The officer was eventually able to identify Ritter.

On August 28, 2006, Ritter was charged with Count I, Class A misdemeanor operating a vehicle while intoxicated endangering a person, Count II, Class B misdemeanor false informing, and Count III, Class D felony operating a vehicle while intoxicated. On August 30, 2006, the trial court set the matter for a jury trial to take place on March 27, 2007. Ritter was in jail until January 30, 2007, at which point he was released when the trial court granted his motion for release.

On March 27, 2007, the trial was continued and reset for November 13, 2007, due to court congestion. On November 13, 2007, the trial was continued and reset for July 15, 2008, due to court congestion. On July 15, 2008, the trial was continued until March 24, 2009, due to court congestion. On March 24, 2009, the jury trial date was continued due to court congestion to November 24, 2009.

On March 15, 2010, the trial court made an entry stating that the jury trial scheduled for November 24, 2009, had been continued to November 16, 2010, due to court congestion. On May 8, 2010, Ritter sought and obtained a continuance of the jury trial, which was rescheduled for May 17, 2011.

[8] On May 2, 2011, Ritter failed to appear for a final pre-trial conference, and a warrant was issued for his arrest. On May 6, 2011, the trial court canceled the jury trial set for May 11, 2011. Ritter was arrested on September 4, 2012.

[9] On October 1, 2012, the trial court held a contempt hearing regarding Ritter's failure to appear on May 2, 2011. Ritter advised the trial court that he had been in and out of the hospital with medical issues. The trial court released Ritter on bond, reset the matter for a final pre-trial conference on December 10, 2012, and scheduled the jury trial for January 22, 2013.

[10] On November 13, 2012, Ritter filed a motion to dismiss, alleging that he had been denied a speedy trial per Indiana Criminal Rule 4(C). On December 6, 2012, the trial court held a hearing regarding the motion. The trial court denied the motion on December 12, 2012.

[11] On January 4, 2013, the State filed a motion to amend the charging information. The motion was granted, and the State charged Ritter with an additional count, habitual substance offender. On January 16, 2013, the State filed a second amended information, which added a Class C misdemeanor operating a vehicle while intoxicated count. Thus, the final counts were as follows: Count I, Class A misdemeanor operating a vehicle while intoxicated

endangering a person, Count II, Class B misdemeanor false informing, Count III, Class C misdemeanor operating a vehicle while intoxicated, Count IV, Class D felony operating a vehicle while intoxicated, and Count V, habitual substance offender.

[12] Ritter failed to appear for his trial and was tried in absentia on January 22, 2013. The jury found him guilty of all charges, and the trial court found him to be in contempt for not showing up at his trial. The trial court noted that sentencing would take place upon Ritter's apprehension. The trial court issued a warrant for Ritter's arrest, which was served on July 29, 2017.

[13] Ritter's sentencing hearing was held on October 30, 2017. The trial court entered judgment on Counts II, IV, and V and sentenced Ritter to six months on Count II and three years on Count IV, to be served concurrently. The sentence was enhanced by three years due to Count V, habitual substance offender, resulting in an aggregate sentence of six years. Ritter now appeals. Additional facts will be provided as necessary.

## Discussion & Decision

## 1. Criminal Rule 4(C)

[14] Ritter claims that the trial court erred by denying his motion to dismiss pursuant to Criminal Rule 4(C). As we consider Ritter's argument, we note that we review a trial court's denial of a motion to dismiss for an abuse of discretion. *Johnson v. State*, 774 N.E.2d 1012, 1014 (Ind. Ct. App. 2002). In reviewing the trial court's decision for an abuse of discretion, we reverse only

where the decision is clearly against the logic and effect of the facts and circumstances. *Id.*

[15] Criminal Rule 4(C) provides, for our purposes, that a defendant may not be held to answer a criminal charge for greater than one year "except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar; . . ." This rule protects the right of an accused to a speedy trial, which is guaranteed by the Sixth Amendment to the United States Constitution and protected by Article 1, Section 12 of the Indiana Constitution. *Clark v. State*, 659 N.E.2d 548, 551 (Ind. 1995). The rule places an affirmative duty on the State to bring a defendant to trial within one year of being charged or arrested. *Cook v. State*, 810 N.E.2d 1064, 1065 (Ind. 2004). The focus of Criminal Rule 4 is not fault, but to ensure early trials. *Curtis v. State*, 948 N.E.2d 1143, 1151 (Ind. 2011).

[16] Under Criminal Rule 4(C), the time period begins "from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later[.]" Crim. R. 4(C). Delays caused by emergency or court congestion do not count toward the one-year period. *Id.* In addition, delays caused by the defendant extend the Rule 4(C) one-year time period. Crim. R. 4(F). "In the end, tacking on additional time to the one-year period and excluding days from the one-year period are one and the same." *Curtis*, 948 N.E.2d at 1150. Thus, to analyze a claim under Criminal Rule 4(C), we

determine whether the time not attributable to the defendant's delays, court congestion, or emergency exceeds 365 days. *Id*.

[17] When court congestion results in the continuance of a trial, the continuance must be for a reasonable time. *Young v. State*, 765 N.E.2d 673, 676 (Ind. Ct App. 2002) (citing Crim. R. 4). The trial judge's determination of a reasonable delay is reviewed under an abuse of discretion standard. *Id*.; *see also Loyd v. State*, 272 Ind. 404, 409, 398 N.E.2d 1260, 1265 (1980) ("The reasonableness of such delay must be judged in the context of the particular case, and the decision of the trial judge will not be disturbed, except for an abuse of discretion.").

[18] Here, the State filed charges against Ritter on August 28, 2006, and Ritter's trial was originally scheduled for March 27, 2007, 211 days later. His trial date was then continued and rescheduled numerous times due to court congestion. Ritter challenges only one of the trial court's findings of congestion, the fourth finding of congestion, contending that the trial court failed to reset his jury trial within a reasonable time. Specifically, on March 15, 2010 (in what appeared to be a nunc pro tunc order), the trial court made an entry stating that the jury trial scheduled for November 24, 2009, had been continued to November 16, 2010, due to court congestion. According to Ritter, the trial court's resetting of the trial date for 358 days later was not "within a reasonable time," and, thus, violated Rule 4(C). *Appellant's Brief* at 14. We disagree.

[19] The trial court provided that the reason for the continuance was court congestion. Such a delay clearly falls within the exceptions set forth in Rule

4(C). Furthermore, Ritter did not object to the November 16, 2010 trial date. It is well-settled that if a defendant seeks or acquiesces in a delay which results in a later trial date, the time limitation is extended by the length of such delay. *Young*, 765 N.E.2d at 676 (citing *Vermillion v. State,* 719 N.E.2d 1201, 1204 (Ind. 1999)). Moreover, on May 8, 2010, Ritter sought and obtained a continuance of his jury trial, and the trial was rescheduled for May 17, 2011. Under these circumstances, we conclude that the trial court set Ritter's trial within a reasonable time. No violation of Criminal Rule 4(C) occurred here.

## 2. Right to Speedy Trial Under the U.S. and Indiana Constitutions

[20] We next address whether Ritter was denied his right to a speedy trial under the U.S. and Indiana Constitutions. The protections of Rule 4(C) are not coextensive with the protections guaranteed by the Sixth Amendment of the U.S. Constitution and Article 1, Section 12 of the Indiana Constitution; thus, the trial court's technical compliance with Rule 4(C) does not end our inquiry. *Logan v. State*, 16 N.E.3d 953, 961 (Ind. 2014).

[21] Ritter argues that the 2,269-day delay from the filing of the charges against him until his trial occurred violated his rights to a speedy trial under the U.S. and Indiana Constitutions and thus entitled him to dismissal of the charges against him. The Sixth Amendment to the U.S. Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial. . . ." U.S. Const. amend. VI. Article 1, Section 12 of the Indiana Constitution states, in applicable part, that "[j]ustice shall be

administered freely, and without purchase; completely, and without denial; speedily, and without delay." Ind. Const. art. 1, § 12. The standard of review for a speedy trial issue, which is a pure question of law, is de novo. *Cundiff v. State,* 967 N.E.2d 1026, 1027 (Ind. 2012).

[22] As an initial matter, the State argues, and Ritter concedes, that Ritter waived his constitutional claims because he raises them for the first time on appeal. Waiver notwithstanding, we address Ritter's claims.

[23] The analysis of a claim involving a speedy trial right is the same under both the state and federal constitutions. *Sweeney v. State,* 704 N.E.2d 86, 102 (Ind. 1998). The inquiry into whether there was a speedy trial violation involves "a balancing test, in which the conduct of both the prosecution and the defendant are weighed." *Barker v. Wingo*, 407 U.S. 514, 530 (1972). *Barker* dictates the factors to be considered are: 1) the length of the delay; 2) the reason for the delay; 3) the defendant's assertion of the right to a speedy trial; and 4) prejudice to the defendant. *Id*.

## Length of Delay

[24] The length of delay is a "triggering mechanism," and the other factors need only be considered once the delay is "presumptively prejudicial." *Barker,* 407 U.S. at 530. Here, the near six-and-one-half-year delay between the filing of the charges against Ritter and his trial calls into question his constitutional right to a speedy trial. As such, we apply the *Barker* approach and take each additional factor in turn. *See Vermillion*, 719 N.E.2d at 1206 (citing *Doggett v. United States*,

505 U.S. 647, 652 n.1 (1992)) (a delay of more than a year post-accusation is "presumptively prejudicial" and triggers the *Barker* analysis).

## Reason for Delay

[25] Regarding the reason for delay, we are instructed to look at "whether the government or the criminal defendant is more to blame for that delay." *Doggett*, 505 U.S. at 651. In *Barker*, the U.S. Supreme Court determined that:

> different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.

407 U.S. at 531. Here, no evidence was presented that the State delayed Ritter's trial in order to hamper the defense. However, the evidence does establish that once Ritter's initial trial was set for March 27, 2007, the trial court continued his trial five times due to court congestion (from March 27, 2007 until November 16, 2010). The delays due to court congestion must be considered against the State. *See id.*

[26] Meanwhile, every other delay was attributable to Ritter. He requested and was granted a continuance of his November 16, 2010 jury trial to May 17, 2011, suggesting that he was not prepared to go to trial on November 16, 2010. He then failed to show for his final pre-trial conference, which caused the trial court

to have to cancel the May 17, 2011 trial, issue a warrant for Ritter's arrest, reschedule the pre-trial conference, and reschedule Ritter's trial for January 22, 2013.

[27] While the delays due to court congestion caused more than three-and-one-half-years of delay, and are considered against the State, Ritter caused over two years of additional delay because he requested a continuance and failed to show for a pre-trial conference. After weighing the reasons for delay, and acknowledging that this is a close call, we find that this factor weighs in Ritter's favor.

## Assertion of Right to Speedy Trial

[28] With regard to the third *Barker* factor, namely if or when Ritter asserted the speedy trial right, the record reflects that Ritter did not assert his speedy trial right until November 13, 2012, when he filed his motion to dismiss. He filed his motion to dismiss after seeking a continuance of his trial, after failing to show for a pre-trial conference, and forty-five days after the trial court reset his trial for January 22, 2013. This factor weighs heavily against Ritter.

## Prejudice

[29] "The final factor in the *Barker* test, prejudice, is assessed in light of the three interests which the right to a speedy trial was designed to protect: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Sweeney*, 704 N.E.2d at 103 (citing *Barker*, 407 U.S. at 532). The most

important of the three is limiting the possibility of defense impairment. *Barker*, 407 U.S. at 532. The burden is on the defendant to show actual prejudice to prove a speedy trial deprivation. *Sturgeon v. State*, 683 N.E.2d 612, 617 (Ind. Ct. App. 1997), *trans. denied*.

[30] Regarding pre-trial incarceration, Ritter was released from incarceration on January 30, 2007, after spending approximately five months in jail. He was arrested on September 4, 2012, for failing to appear for his final pre-trial conference, but was released on bond on October 1, 2012. While Ritter does suffer from medical problems, there was no evidence that he suffered anxiety due to the delays in his case. In addition, Ritter showed little concern for the delay. He did not object when the trial court repeatedly reset his trial as a result of court congestion, and he did not file his motion to dismiss until November 13, 2012, over six years after he was initially charged. He also sought his own continuance and failed to show at his final pre-trial conference and at his jury trial. Moreover, the record does not establish that the delay in the case undermined or impaired Ritter's defense, e.g., in the form of lost evidence or missing witnesses. This factor weighs heavily against Ritter.

[31] Our balancing of the *Barker* factors under the facts of this case leads us to conclude that the delay did not deprive Ritter of his right to a speedy trial under the Sixth Amendment to the U.S. Constitution or Art. 1, Sec. 12 of the Indiana Constitution. Accordingly, the trial court did not err in denying Ritter's motion to dismiss the charges against him.

# 3. Inappropriate Sentence

[32] Ritter next argues that his six-year sentence is inappropriate in light of the nature of his offenses and his character. He maintains that his sentence should be revised because "the nature of the offenses w[as] not uniquely egregious or atypical and though he had a criminal history[,] his involvement and support of his church, his multiple health problems, which include epilepsy and cancer, and military service support his character." *Appellant's Brief* at 13.

[33] Indiana Appellate Rule 7(B) provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. When reviewing a sentence, our principal role is to leaven the outliers rather than necessarily achieve what is perceived as the correct result in each case. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). "We do not look to determine if the sentence was appropriate; instead we look to make sure the sentence was not inappropriate." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012).

[34] "[S]entencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Cardwell*, 895 N.E.2d at 1222. "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson*

*v. State*, 29 N.E.3d 111, 122 (Ind. 2015). In conducting our review, we may consider all aspects of the penal consequences imposed by the trial court in sentencing, i.e., whether it consists of executed time, probation, suspension, home detention, or placement in community corrections, and whether the sentences run concurrently or consecutively. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010). In addition, as we assess the nature of the offense and character of the offender, "we may look to any factors appearing in the record." *Boling v. State*, 982 N.E.2d 1055, 1060 (Ind. Ct. App. 2013). Ritter has the burden to show that his sentence is inappropriate. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007).

[35] When determining whether a sentence is inappropriate, we acknowledge that the advisory sentence is the starting point the General Assembly has selected as an appropriate sentence for the crime committed. *Childress v. State*, 848 N.E.2d 1073, 1081 (Ind. 2006). Ritter was convicted of false informing as a Class B misdemeanor and operating a vehicle while intoxicated as a Class D felony. He also was found to be an habitual substance offender. At the time Ritter committed the offenses, the sentence for a Class B misdemeanor was a "fixed term of not more than one hundred eighty (180) days." Ind. Code § 35-50-3-3. The sentencing range for a Class D felony was between six months and three years, with an advisory sentence of one and one-half years. *See* I.C. § 35-50-2-7. In addition, the habitual substance offender statute provided that "[t]he court shall sentence a person found to be a habitual substance offender to an

additional fixed term of at least three (3) years but not more than eight (8) years imprisonment." I.C. § 35-50-2-10(f) (repealed 2014).

[36] Although the trial court imposed the maximum sentence for each of Ritter's two convictions, the court ordered them to be served concurrently. Furthermore, the court imposed the minimum enhancement for his habitual offender enhancement. The court recommended that Ritter be placed in a therapeutic community while serving his sentence and advised Ritter that it would later consider a modification of his sentence if he successfully completed the program.

[37] As to the nature of Ritter's offenses, while intoxicated Ritter drove his vehicle on the wrong side of the road, potentially placing other drivers in danger. When he was stopped and questioned by a police officer, he repeatedly provided the wrong birthdate and an incorrect social security number such that the officer had to make several calls to various police agencies to determine Ritter's correct identity. No aspect of his offenses persuades us that his sentence is inappropriate.

[38] Ritter also has not shown his sentence to be inappropriate in light of his character. When considering the character of the offender, one relevant fact is the defendant's criminal history. *Johnson v. State,* 986 N.E.2d 852, 857 (Ind. Ct. App. 2013). The significance of criminal history varies based on the gravity, nature, and number of prior offenses in relation to the current offense. *Id.*

[39] Ritter has a criminal history that began in 1992 and continues to the present, including the following convictions: Class D felony possession of marijuana and Class D felony obtaining or attempting to obtain a legend drug by fraud (1992); misdemeanor operating while intoxicated (1999); Class D felony nonsupport of a dependent child (2000); misdemeanor domestic battery (2004); Class D felony battery resulting in bodily injury (2004); misdemeanor driving while intoxicated, Class D felony possession of marijuana, and Class D felony operating while intoxicated – BAC of .08 or greater (2004); misdemeanor public intoxication (2010); and misdemeanor domestic battery (2013). At the time of his sentencing, Ritter had a Level 5 felony domestic battery and a Level 6 felony strangulation case pending. In addition, in the instant case, Ritter failed to appear for court for a pre-trial conference and failed to appear for his jury trial.

[40] Under these facts and circumstances, we find that both the nature of the offenses and Ritter's character support the six-year sentence imposed by the trial court. Ritter's sentence is not inappropriate.

[41] Judgment affirmed.

Najam, J. and Robb, J., concur.